[No. D031575. Fourth Dist., Div. One. June 6, 2000.]

DAVID MENDOZA et al., Plaintiffs and Appellants, v. CLUB CAR, INC., Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part IV.

## COUNSEL

Tosdal, Levine, Smith & Steiner and Thomas Tosdal for Plaintiffs and Appellants.

Haight, Brown & Bonesteel, Robert L. Kaufman, Jules S. Zeman and Teresa M. Wainman for Defendant and Appellant.

## OPINION

**NARES, J.**—Defendant Club Car, Inc. (CCI), a manufacturer of electric golf carts, appeals from a products liability judgment entered against it following a bifurcated trial on liability and damages. This action arises out of an accident involving a CCI golf cart whose parking brake allegedly spontaneously released, causing plaintiff David Mendoza (Mendoza) to suffer serious injuries, including a broken neck.[2] Judge Peter E. Riddle presided over the liability phase and Judge Thomas O. LaVoy over the damages phase of the trial. This appeal is taken solely from the portion of the judgment finding CCI liable.

CCI's appeal is based on four contentions related to the liability phase of the trial. First, the court erred in finding an inconsistency in the special verdict, instructing the jury on that issue, and directing the jury to deliberate further to clear up the inconsistency. Second, the court erred by not granting CCI's motion for new trial on the grounds of juror misconduct based on the fact an alternate juror was seated during deliberations and the verdict was rendered 49 minutes later. Third, the court erred by failing to instruct the jury to disregard all testimony and documents relating to other problems with golf cart brakes that had previously been withdrawn from evidence.

---

[2] Mendoza also sued Steele Canyon Golf and Country Club (Steele Canyon), the lessee of the golf cart and owner of the golf course where the injury occurred. A judgment for negligence was entered against Steele Canyon. Steele Canyon has not appealed that judgment and is not a party to this appeal.

Last, CCI contends insufficient evidence exists to find a design defect in the golf cart or that the defect caused Mendoza's injuries.

Mendoza and his wife, Delores, also appeal from the judgment, contending that if the judgment is reversed and a new trial ordered, certain evidentiary rulings should be reversed. Specifically, Mendoza contends the court erred in refusing to admit documents relating to other alleged brake failures on CCI golf carts, and evidence of tests by Mendoza's expert, Reuben Volmer (Volmer), on a CCI golf cart.

Rejecting CCI's contentions, we affirm the judgment. The Mendozas' appeal is thus moot.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Incident*

At the time of the accident in December 1995, Mendoza was 50 years old and a district manager for Kragen Auto Company. On that date he and three acquaintances were playing golf at Steele Canyon. The foursome rented two CCI-manufactured electric golf carts. The subject cart, labeled cart No. 112, was part of a leased fleet of CCI carts delivered to Steele Canyon in February 1995.

Mendoza rode in a CCI golf cart along with one other member of the foursome. Mendoza knew he was responsible for any damage to the cart. Steele Canyon had a policy of charging customers who negligently caused damage to its golf carts.

Mendoza's injury occurred on the canyon course, a nine-hole course with steep, hilly terrain. Shortly before the accident, Mendoza parked the cart on the dirt cart path adjacent to a hillside, at the bottom of which is a dry creek bed. Mendoza "pushed hard" on the parking brake pedal, locking it in the down position.[3] The cart path where the cart was parked sloped steeply enough that the cart would have immediately commenced rolling if the parking brake had not been engaged.

Mendoza exited the cart to help his golfing partner O'Hara look for his ball. The cart was stationary when he got out. As they were sitting in their cart, the two other members of the foursome, John and Bill Watkins, observed Mendoza's cart parked and stationary after he exited.

---

[3]The parking brake of the CCI golf cart is designed to engage by applying pressure on a pad on the upper left side of the brake pedal. The parking brake is released by either depressing the pad or stepping on the accelerator.

John and Bill Watkins are experienced golfers. Their family had owned a CCI golf cart, and the Watkins brothers had rented golf carts on numerous prior occasions. They were familiar with the sound made by a released parking brake on CCI carts.

A few minutes after Mendoza left his cart, John and Bill Watkins both heard the distinctive sound of the parking brake releasing on Mendoza's cart. The cart began moving slowly down the cart path.

John Watkins alerted Mendoza his cart was going down the hill. Mendoza, who was down the slope and about 10 yards behind the cart, attempted to retrieve it. The cart originally proceeded down the path. When the path veered to the right, the cart went down the hillside on the left and began to pick up speed.

Halfway down the hillside, Mendoza caught up with the cart. He intended to jump in and apply the brakes. Mendoza grabbed a roof strut with his left hand. However, believing the cart was "going too fast," Mendoza "chickened out" and decided "to let it go."

About that time, the cart hit a depression, causing the wheels to suddenly turn left into Mendoza. The cart threw Mendoza into the air and onto the large rocks in the creek bed.

As a result of the accident, Mendoza suffered multiple fractures of the spinal vertebrae and a spinal cord injury in the neck region.

B. *Mendoza's Claims*

Mendoza sued CCI for strict products liability, negligence and breach of warranty. The causes of action for negligence and breach of warranty, as well as the punitive damages claim on the products liability cause of action, were dismissed at trial upon CCI's motion for nonsuit. Mendoza's wife brought a claim for loss of consortium.[4]

C. *Trial on Liability*

1. *Design and condition of the parking brake*

CCI's design engineer testified regarding the braking system design on the golf cart. The parking brake is operated by engagement of a pawl with a

---

[4]CCI's appeal does not address her claim, except that to the extent Mendoza's claim is disposed of on this appeal, his wife's claim would necessarily fail as well.

latch. When the parking brake pedal is depressed, the narrow tip of the pawl fits into one of six teeth in the latch, depending on how hard the parking brake pedal is depressed. The pawl is connected to the parking brake pedal by linkages. The latch is also connected to the accelerator pedal by linkages. The linkage to the accelerator is mounted on two plastic bearing blocks on the undercarriage of the cart. When the parking brake is set, the depth of the engagement of the pawl is approximately one-tenth of an inch. The pawl and latch are designed to be movable.

To prevent the latch and pawl from unintentionally disengaging, the direction of the force exerted by the pawl upon the latch goes directly through the center of rotation of the accelerator pivot shaft, to which the latch is attached by linkages. If the force is directed rearward of that point, a rotational force is created that moves the latch rearward (as if the pedal is depressed) and the parking brake can spontaneously release. The harder the brake pedal is pushed and the deeper the tooth is engaged, the more force is generated, the more load on parts and the greater the tendency of the pawl to push away and the parking brake to spontaneously disengage.

Mendoza's expert, Volmer, a registered mechanical and safety engineer, testified a design defect in the cart's braking system caused the parking brake to fail on the date of the accident. Volmer testified the close tolerance of the latch and pawl made it easy for a number of different factors to cause the latch and pawl to not match up at the correct angle and redirect force rearward, causing the brake to release. The factors include wear, adjustment, load on the linkages, alignment and/or deflection of parts.

Volmer's inspection of the subject cart revealed clearance between the shaft and block and wear on the latch and pawl. These factors could affect the direction of force on the latch and pawl.

The Mendozas also presented evidence suggesting the condition of the braking system on the cart was altered after the accident. Between the time of the accident and inspection by Mendoza's expert, Steele Canyon's mechanic washed the parking brake assembly with high-power water and air hoses and removed the brake drums. The mechanic sprayed the moving and nonmoving parts of the entire brake assembly with thick black graphite, purportedly for lubrication and preservation. According to Mendoza's expert, the graphite has no anticorrosion benefits and served no lubrication purpose by the manner in which it was sprayed. He testified the effect of the graphite spraying was to cover up oxidation and tool marks on the parking brake parts. When Volmer removed the latch, he was unable to tell if the latch had moved on its pad because there was graphite between the latch and

pad. Volmer opined the parking brake assembly had been altered after the accident.

## 2. *The court's instruction to disregard withdrawn evidence*

At trial, the court admitted five documents evidencing prior complaints of failure of braking systems in CCI golf carts, for the limited purpose of showing notice of the brake problem to CCI. One document was a letter from an individual named Buck Williams (the Williams letter), stating the parking brake on a CCI cart failed, causing the cart to roll and Williams to suffer property damage. The remaining four were CCI warranty documents indicating parking brakes on carts would not hold.

However, following the court's grant of CCI's motion for directed verdict on Mendoza's negligence claim, the court also granted CCI's request that the five documents not be allowed as evidence and not be argued in closing argument or provided to the jury during deliberations.

During deliberations, the jury asked a question about the Williams letter: "Oct[.] 30, 1995 letter warr[a]nty request letter on Cart of same series as Cart #112 regarding warr[a]nty. We are requesting more information on this letter or to see the letter ourselves." The court conferred telephonically with counsel regarding the note. Although no supporting evidence appears in the record, CCI claims it requested the court to instruct the jury that all five documents originally admitted for notice purposes had been stricken and that none could be considered for any purpose. The court instructed the jury to disregard the requested letter: "Judge Riddle determined that this letter warranty request was no longer relevant as to any issue in front of the jury at this time. Don't consider it for any purpose."

## 3. *Jury instructions on products liability*

At the conclusion of the trial on liability, the court instructed the jury on (among other things) Mendoza's claim of design defect products liability:

"DESIGN DEFECT-ESSENTIAL ELEMENTS

"The essential elements of a claim based upon an alleged design defect are:

"1. The defendant was the designer or lessor of a product, namely the golf cart parking brake;

"2. The product possessed a defect in its design;

"3. The defect in design existed at the time it left the defendant's possession;

"4. The defect in design was a cause of injury to the plaintiff; and

"5. Plaintiff's injury resulted from a use of the product that was reasonably foreseeable by the defendants.

"A product is defective in design:

"If it fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner."

### 4. *Jury deliberations and verdict*

The parties jointly drafted the special verdict form. The portions applicable to Mendoza's claim against CCI state:

"QUESTION NO. 3: Was there a defect in the design of the golf cart?

"ANSWER: 'Yes' or 'No'

"ANSWER: _____

"If you answered Question No. 3 'yes,' answer Question No. 4. If you answered Question No. 2 'yes' and Question No. 3 'no,' answer Question No. 8. If you answered both Question Nos. 1 and 3 'no,' sign and return this form.

"QUESTION NO. 4: Did the defect exist when the golf cart left the possession of Club Car?

"ANSWER: 'Yes' or 'No.'

"ANSWER: _____ [¶] . . . [¶]

"QUESTION NO. 6: Was the defect, if any, a cause of harm to plaintiff?

"ANSWER: 'Yes' or 'No.'

"ANSWER: _____

"If you answered Question No. 6 'yes,' answer Question No. 7. If you answered Question No. 6 'no,' answer Question No. 8.

"QUESTION NO. 7: Was the harm to plaintiff caused by a use of the product that was reasonably foreseeable?

"ANSWER: 'Yes' or 'No.'

"ANSWER: _____ [¶] . . . [¶]

"QUESTION NO. 10: Assuming that 100% represents the total causes of DAVID MENDOZA's injury, what percentage of this 100% is attributable to the negligence of plaintiff DAVID MENDOZA and what percentage of this 100% is attributable to the negligence or conduct of the defendants or others?

"ANSWER:

"To Plaintiff DAVID MENDOZA[:] _____%

'To Defendant STEELE CANYON[:] _____%

"To Defendant CLUB CAR, INC.[:] _____%

"To Others[:] _____%" (Original underscoring.)

The jury began deliberations at 4:42 p.m. on August 12, 1997. The jury deliberated the next two full days. On the fourth day of deliberations, the jury deliberated from 9:00 a.m. until 11:43 a.m., at which time the court excused a juror. The court seated an alternate juror, read BAJI No. 15.56,[6] and excused the jury for the weekend.

On Monday, August 18, 1997, the jury deliberated with the new juror. At the end of the day, the court excused another juror for illness. On the morning of August 19, 1997, the court seated a second alternate juror and again instructed the jury under BAJI No. 15.56.

Approximately 49 minutes later, the jury returned a verdict in Mendoza's favor on the negligence count against Steele Canyon. As to CCI, the jury answered "yes" to question No. 3 (whether there was a design defect), "yes"

---

[5]Question No. 7 differs from question No. 4 in the standard BAJI special verdict on products liability, BAJI No. 16.11, which states in part: "[W]as plaintiff's injury caused by a use of the product that was reasonably foreseeable *by [such] defendant*." (Italics added.)

[6]BAJI No. 15.56 states in part: "A juror has been excused for legal cause and replaced with an alternate juror. . . . [¶] . . . [¶] You are therefore instructed to disregard and put out of your mind all past deliberations and begin deliberating anew. This means that each remaining juror must set aside and disregard the earlier deliberations as if they had not taken place."

to question No. 4 (whether the defect existed when it left CCI's possession), and "yes" to question No. 6 (whether the defect was a cause of harm to plaintiff).

The jury then answered "no" to question No. 7 (whether plaintiff's injury was caused by a use of the product that was reasonably foreseeable). However, the jury did not stop there as to its verdict on the claim against CCI.[7] The jury answered question No. 10, and assigned CCI 40 percent of the fault for Mendoza's injury, Steele Canyon 44 percent and Mendoza 16 percent.

### 5. *Court's finding of inconsistent verdict/further jury deliberations*

After the verdict was read, counsel and the court discussed the verdict at a sidebar conference. Counsel for Mendoza and Steele Canyon argued the verdict was inconsistent between questions Nos. 7 and 10. Counsel for CCI argued the "no" vote on question No. 7 meant as a matter of law CCI was entitled to judgment in its favor. Counsel for CCI requested the court instruct the jury to put in 0 percent for CCI in question No. 10 based upon its "no" answer to question No. 7.

Counsel for Steele Canyon and Mendoza argued the jury should be instructed that the answers to question Nos. 7 and 10 were inconsistent, and the jury should be sent back for further deliberations to correct the inconsistency. The court agreed.

The court then instructed the jury on the inconsistency, with the jury foreperson in response acknowledging a mistake was made:

"THE COURT:

"Ladies and gentlemen, in the view of the court, your answers to question number seven and 10 present an inconsistency. . . . You will notice in question number seven your answer was no. That was reflected with 12 no votes. By answering no to question number seven, that eliminates liability for Club Car. So when you get to question number 10 then, Club Car should not be included in the breakdown of the percentages. So what I am going to ask you to do is reflect on seven and 10 and make any appropriate changes.

"Does the foreperson understand what I am talking about?

---

[7]Here again the verdict form differs from BAJI No. 16.11, omitting the instruction to sign and return the verdict if the jury answers "no" to the question on reasonably foreseeable use. (BAJI No. 16.11, question Nos. 4 & 5, & instructions immediately following.)

"Ms. FAULKNER: *I understand. Our interpretation of the question was different. Yes.*

"THE COURT: I understand. This is not an easy form. The responsibility could rest very squarely on the court's shoulders for any confusion here.

"At this time there is an inconsistency between the two questions. I am not telling you how to rectify it. I am not necessarily saying leave seven as it is and change 10 or leave 10 as it is and change seven. That is your responsibility as jurors. I am just saying in my interpretation of the situation that the two—the answers are inconsistent, and that if one does have a—if the jury does have a no answer to seven, then the breakdown in question number 10 needs to be changed to eliminate Club Car.

"I am not suggesting by anything I have said how this should be handled by you or what decision you should make. I am simply pointing out the inconsistency.

"I will ask the original verdict form be returned to the foreperson of the jury and ask the foreperson to conduct further deliberations. And if you make any changes, simply line out the answer, put in the other answer and initial it.

"All right. Is that clear to you?

"Ms. FAULKNER: Yes." (Italics added.)

The jury then withdrew at 11:31 a.m. to resume deliberations. Eleven minutes later the jury informed the court it had reviewed the verdict. The jury informed the court that it had changed the answer in question No. 7 from "no" to "yes." The "yes" votes on question No. 7 were 10 to two.

D. *Damages Trial*

In February 1998 a new jury presiding over the damages phase of the trial awarded Mendoza $610,823 in economic damages and $1 million in non-economic damages, jointly and severally against Steele Canyon and CCI. The jury also awarded $100,000 to Delores Mendoza.

### E. CCI's Posttrial Motions

In February 1998 CCI filed motions for new trial, for judgment notwithstanding the verdict and to vacate the judgment and enter a new verdict.[8] CCI asserted no substantial evidence existed to support a finding of design defect, the instruction to the jury to deliberate further was erroneous and prejudicial, and the court should have instructed the jury to disregard all withdrawn evidence, not only the specific document questioned by the jury.

In April 1998, the court denied CCI's motions. This timely appeal follows. .

### DISCUSSION

### I. Inconsistent Special Verdict Answers

CCI contends the court committed reversible error by instructing the jury there was an inconsistency in the special verdict in the answers to question Nos. 7 and 10, and in thereafter instructing the jury to deliberate further to remedy the situation. CCI also asserts it was error for the court to instruct the jury on the legal effect of its answers, regardless of whether the verdict was inconsistent. We reject these contentions and hold the actions of the court were proper (and in fact required) to correct the defect in the verdict and cause the verdict to reflect the jury's true intent.

### A. Court's Finding the Verdict Was Inconsistent

#### 1. Standard of review

A court's instruction to the jury that a verdict is inconsistent and they are to deliberate further is reviewed for an abuse of discretion. (*Maxwell v. Powers* (1994) 22 Cal.App.4th 1596, 1603-1604 [28 Cal.Rptr.2d 62].) Under this standard the reviewing court will not disturb the trial court's decision unless it "has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." (*Adoption of D. S. C.* (1979) 93 Cal.App.3d 14, 24-25 [155 Cal.Rptr. 406].) The Court of Appeal will only interfere with the trial court's exercise of discretion when it finds under all the circumstances, viewed most favorably in support of the trial court's action, no judge could have reasonably reached the same result. (*Smith v. Smith* (1969) 1 Cal.App.3d 952, 958 [82 Cal.Rptr. 282].)

---

[8]CCI previously filed a motion to vacate in September 1997, following the liability phase of the trial. The court denied it, without prejudice, as premature.

### 2. *Analysis*

■ Code of Civil Procedure[9] section 619 states: "PROCEEDINGS WHEN VERDICT IS INFORMAL. When the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the Court, or the jury may be again sent out."

The terms "informal" and "insufficient" have been broadly defined in cases interpreting section 619. " 'Informal' is defined as 'defective in form; not in the usual form or manner; contrary to custom or prescribed rule.' " (*Crowe v. Sacks* (1955) 44 Cal.2d 590, 596 [283 P.2d 689].) " 'Insufficient' is defined as 'inadequate for some need, purpose or use.' " (44 Cal.2d at p. 596.)

Thus, section 619 applies to an inconsistent verdict. (*Johnson v. Marquis* (1949) 93 Cal.App.2d 341, 355 [209 P.2d 63] ["The court was authorized by section 619 of the Code of Civil Procedure to instruct the jury to retire and correct the original inconsistency."].) Section 619 also applies to an ambiguous verdict. (*Sparks v. Berntsen* (1942) 19 Cal.2d 308, 310-313 [121 P.2d 497].)

Moreover, courts are given wide latitude in deciding whether a verdict is ambiguous or inconsistent so as to come within section 619. As the California Supreme Court stated in *Woodcock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452 [72 Cal.Rptr. 217, 445 P.2d 881]: " 'If the verdict is ambiguous the party adversely affected should request a more formal and certain verdict. Then, if the trial judge *has any doubts on the subject*, he may send the jury out, under proper instructions, to correct the informal or insufficient verdict.' [Citations.]" (*Id.* at p. 456, italics added.)

■ CCI contends a different standard applies, and the situations in which a court may invoke section 619 are extremely narrow. ■ CCI bases this assertion on the rule a verdict should not be modified "if there is any 'possibility of reconciliation under any possible application of the evidence and instructions.' " (*Lambert v. General Motors* (1998) 67 Cal.App.4th 1179, 1183 [79 Cal.Rptr.2d 657] (*Lambert*).) This is a correct statement of law. However, it has no application to the situation presented here.

First, the rule stated in *Lambert* applies only to inconsistencies between general and special verdicts, and inconsistencies between special findings

---

[9]All further statutory references are to the Code of Civil Procedure unless otherwise specified.

rendered in support of a general verdict. (*Lambert, supra,* 67 Cal.App.4th at p. 1183; § 625.) This is because special findings are " 'primarily and principally for the purpose of determining whether the general verdict is or is not against law.' " (*Hasson v. Ford Motor Co.* (1977) 19 Cal.3d 530, 540 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158] (*Hasson*).) For this reason, no presumption is given in favor of special findings and every reasonable intendment is given in favor of the general verdict. (*Ibid.*)

■ Here, there was no general verdict inconsistent with a special verdict or findings. The inconsistency was between two questions within a special verdict. Accordingly, the rule cited by CCI has no application.

■ Indeed, there is no such presumption in favor of upholding a special verdict. Rather, a special verdict's correctness must be analyzed as a matter of law. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 285 [73 Cal.Rptr.2d 596].) This is because a special verdict is far more susceptible to defect than a general verdict, which can be tested with special findings. (63 Cal.App.4th at p. 285.)

■ Further, *Lambert* and *Hasson* both involved situations wherein the discrepancy in the verdict was not remedied before the jury was discharged. In those cases, the Court of Appeal was asked to interpret a verdict after the fact. The situation presented here is different, as the trial court itself recognized the inconsistency before the jury was discharged.

Where the discrepancy is identified before the jury is discharged, the court retains control of the jury and may, pursuant to section 619, use its power to correct the verdict before it becomes final. (*Maxwell v. Powers, supra,* 22 Cal.App.4th at p. 1603.) In fact, it is the court's *duty* in such a case to attempt to remedy the situation. (*Ibid.*)

Here, the court correctly exercised its discretion and determined the verdict was inconsistent, ambiguous or otherwise defective under section 619. The findings in CCI's favor on the reasonably foreseeable use element presented in question No. 7 cannot be reconciled with a finding in question No. 10 that allocated a percentage of fault to CCI for Mendoza's injuries. If the jury had understood the meaning of question No. 7, and that a "no" vote would relieve CCI of liability, they would not have proceeded on to assess liability against it. A sufficient basis for the court to exercise its discretion existed based upon the answers in the special verdict alone.

Additional evidence supports the court's conclusion the jury misunderstood the import of question No. 7. The foreperson stated on the record,

following the court's explanation of the inconsistency: "I understand. Our interpretation of the question was different." We may properly consider this evidence as a concurrent statement by the jury explaining its verdict. (*Maxwell v. Powers, supra,* 22 Cal.App.4th at p. 1603.)

Finally, the most compelling evidence that the original verdict did not reflect the jury's intent is the action of the jury when it was sent back for further deliberations. Within 11 minutes, the jury returned, having lined out its "no" answer to question No. 7, writing in "yes." The rational and reasonable conclusion to be drawn from this action is that the original answer to question No. 7 was a mistake that did not reflect the jury's true intention.

CCI contends the verdict was not inconsistent, as the jury could have consistently answered "no" to question No. 7 ("Was the harm to plaintiff caused by a use of the product that was reasonably foreseeable?") and answered question No. 10 ("what percentage of [the total causes of Mendoza's injury] is attributable to . . . the negligence or conduct of the defendants or others?") by assigning 40 percent to CCI. CCI bases this contention on the proposition that question No. 7 deals with foreseeable use and question No. 10 only asks the jury to assign a percentage of causation, not fault. Thus, CCI posits the jury could have reasonably found in favor of CCI on foreseeable use, requiring judgment in CCI's favor, and still logically apportioned a percentage of cause of Mendoza's injuries against it. This argument fails on a number of different levels.

First, question No. 10 asks the jury to apportion a percentage of causation "attributable to the negligence or conduct of the defendants." Thus, the question *is* asking the jury to assign a percentage of fault against Steele Canyon and CCI. The phrase "or conduct" was obviously used to refer to the fault of CCI. (See BAJI No. 16.11 [giving options to use "negligence," "fault" or "wrongful conduct" to refer to fault of defendants where negligence and products liability claims are combined].)

Additionally, even if it was unclear the jury was assigning fault to CCI in question No. 10, the court could have reasonably determined the verdict was the result of a mistake given the way in which question No. 7 was drafted. On foreseeable use, the question in BAJI No. 16.11 is as follows: "[W]as plaintiff's injury caused by a use of the product that was reasonably foreseeable *by [such] defendant.*" (Italics added.) For some unexplained reason, in the verdict form given to the jury, the phrase "by such defendant" was omitted. Accordingly, the jury could have easily interpreted the question to mean "whether the injury was caused by a use of the product that was

reasonably foreseeable *to plaintiff.*" Under such an interpretation, the jury could have understood that a "yes" answer would be a finding against Mendoza and for CCI. This is supported by the foreperson's comment to the court after it explained the inconsistency "I understand. Our interpretation of the question was different."[10]

The special verdict form deviated from BAJI No. 16.11 in another key respect. In BAJI No. 16.11, following the question on reasonably foreseeable use, the jury is instructed to sign and return the verdict form if that question is answered "no." (See BAJI No. 16.11, questions Nos. 4 & 5, and instruction immediately following.) The form given to the jury in this case omitted such an instruction. The failure of the verdict to tell the jury to not go any further could have also led the jury to believe a "no" vote against CCI still allowed the jury to find in Mendoza's favor.

CCI contends the jury was required to go on and answer question No. 10 as against CCI, even if it answered "no" to question No. 7. CCI submits that this is so as liability must be apportioned among the "entire universe of tortfeasors, not just those who are sued, and not just those who are legally liable to compensate the injured party." In support of this position, CCI cites *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593 [7 Cal.Rptr.2d 238, 828 P.2d 140] *(Up-Right)*. The *Up-Right* decision does not support CCI's contention.

The *Up-Right* holding did not require the jury in this case to answer question No. 10 and allocate fault against CCI if the jury answered question No. 7 "no." *Up-Right* merely held that a jury must apportion fault amongst all potentially liable tortfeasors, even those not sued or who are statutorily immune. *(Up-Right, supra,* 2 Cal.4th at pp. 601-604.) By answering "no" to question No. 7, the jury found against Mendoza on an element necessary for finding CCI liable for strict products liability. It would be illogical to thereafter include CCI in the apportionment of fault as CCI had already been found *not to be at fault and not liable* by the jury. There is nothing in *Up-Right*, or any other case authority, that holds that Civil Code section 1431.2 requires apportionment of fault against defendants (or potential defendants) who are *not* at fault.

Based on all the evidence before the court, we conclude it was reasonable for the court to believe an inconsistency existed in the special verdict between questions Nos. 7 and 10, and to apply section 619. *(Smith v. Smith, supra,* 1 Cal.App.3d at p. 958.)

Finally, CCI's argument the verdict was not necessarily inconsistent ignores the fact the court is given the discretion to exercise its powers under

---

[10]As all parties jointly drafted the special verdict form, we will not, as CCI requests, interpret the verdict against Mendoza. *(Lambert, supra,* 67 Cal.App.4th at p. 1183.)

section 619 if the verdict is not inconsistent, but only ambiguous. (*Sparks v. Berntsen, supra,* 19 Cal.2d at pp. 310-313.) The record amply supports the conclusion the verdict was at least ambiguous, allowing the court to exercise its discretion to instruct the jury to deliberate further.

Accordingly, we hold the court did not abuse its discretion in invoking section 619 and instructing the jury to deliberate further in an attempt to cure the defective verdict.

## B. *Wording of the Court's Inconsistency Instruction*

### 1. *Standard of review*

 Alleged instructional error is reviewed under the prejudicial error standard. Under this standard, the judgment is affirmed unless appellant can show an error that was so prejudicial a miscarriage of justice occurred. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 [34 Cal.Rptr.2d 607, 882 P.2d 298].)

### 2. *Analysis*

 CCI takes issue with the manner in which the court instructed the jury on the inconsistency. CCI contends the language of the court's inconsistency instruction was biased against CCI and that it was improper and prejudicial to inform the jury as to the legal effect of the jury's answers to questions Nos. 7 and 10.

It is true that "[t]he action of the judge in the correction of verdicts should be taken with caution. He must not throw the weight of his influence into the deliberations of the jury as to matters exclusively within its province." (*Crowe v. Sacks, supra,* 44 Cal.2d at p. 598 [statement to jury that damages award was "grossly inadequate" held reversible error].)

Here, however, there was nothing prejudicial in the language of the instruction itself. In fact, the effort of the court in ensuring the instruction was fair and evenhanded was salutary. The court told the jury it was not asking the jury to decide the matter in a certain way. It did not make any statement that it thought the jury's original answer to question No. 7 was mistaken. It explained the inconsistency clearly and concisely.

Additionally, no prejudicial error results from the fact the instruction informed the jury the legal effect of its answers. In support of this claim of error, CCI has cited the general rule nationwide that a trial court

should not inform a jury about the effect of their special verdict upon the ultimate rights or liabilities of the parties. (Annot., Reversible Effect of Informing Jury of the Effect That Their Answers to Special Interrogatories or Special Issues May Have Upon Ultimate Liability or Judgment (1963) 90 A.L.R.2d 1040, 1041.) This annotation further states if such an instruction is given, it is generally held to be reversible error. (*Ibid.*) However, this general rule is subject to major exceptions. The most predominant is that the error is harmless if the instruction is on matters the jury became acquainted with during trial. (*Id.* at pp. 1051-1054.)

There is only one reported decision in California addressing this instructional issue, and none applying it to section 619. In *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834 [176 Cal.Rptr. 239], an accountant malpractice action, the appellant contended on appeal that the trial court committed prejudicial error in instructing the jury on the legal consequences of their findings of fact related to the respondents' statute of limitations defense. (*Id.* at p. 853.) The court first noted there was no reported decision in this state addressing appellant's contention. (*Id.* at p. 854.) The appellate court then, without discussion of the propriety of the rule, acknowledged the majority of courts from other jurisdictions have held such an instruction to be prejudicial error. (*Ibid.*)

However, the court proceeded to find no prejudice requiring reversal as the jury necessarily became acquainted with the legal effect of the statute of limitations defense during trial based upon counsel arguing these facts in closing argument and otherwise explaining them during trial. (*Electronic Equipment Express, Inc. v. Donald H. Seiler & Co., supra,* 122 Cal.App.3d at p. 854.) The court further found the error to be harmless on the basis that "any intelligent juror would know the effect of their verdict without being so informed by the court." (*Ibid.*)

In this case we also hold no prejudicial error occurred in giving the jury an instruction explaining the legal effect of their answer on the special verdict form. The jury was apprised of the legal effect of their verdict in closing argument by counsel.

No California court has specifically addressed the prohibition against instructing on the legal effect of answers on special verdicts where the court is correcting a verdict under section 619. However, without discussing the instructional prohibition, the court in *Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675 [39 Cal.Rptr. 64] (*Fibreboard*) upheld an instruction that told the jury the legal effect of its answers on a special verdict form as a proper exercise of the court's power to remedy a defective verdict under section 619.

*Fibreboard* arose out of alleged unlawful labor practices by a union local, an international union and certain union officers. (*Fibreboard, supra,* 227 Cal.App.2d at p. 685.) The appeal followed a jury trial where the plaintiff Fibreboard was awarded compensatory and punitive damages against all the defendants. (*Id.* at p. 688.) When the jury originally returned its verdict, it did not separate the verdict against the international union and the local. It also rendered no verdict at all on compensatory damages as against the individual defendants. (*Id.* at p. 731.)

The court questioned the jury foreperson whether the verdict on compensatory damages was intended to include both the international union and the local. The jury foreman responded it included both. The court inquired whether the jury had found in favor of the individual defendants. The foreperson responded in the affirmative. (*Fibreboard, supra,* 227 Cal.App.2d at p. 731.)

The court then instructed the jury on the legal effects of their answers. The court stated if they intended to find against the international union and the local, it must list them separately. The court also informed the jury it must specifically indicate a finding on the verdict for or against the individual defendants. (*Fibreboard, supra,* 227 Cal.App.2d at p. 731.) The jury resumed deliberations and came back with a verdict awarding compensatory damages against both the international union and the local. Despite the foreperson's earlier response to the judge, the jury also awarded compensatory damages against the individual defendants. (*Id.* at pp. 731-732.)

The defendants contended on appeal the court erred in so instructing the jury. (*Fibreboard, supra,* 227 Cal.App.2d at p. 732.) The appellate court disagreed, holding the trial court's instruction was a proper exercise of its powers under section 619 and did not influence or interfere with the jury's duties. (*Fibreboard, supra,* 227 Cal.App.2d at pp. 732-733.)[11]

Based upon *Fibreboard*, the goal of section 619, and the facts in this case, we conclude the instructional bar against instructing a jury on the legal effect of their answers to verdict forms does not apply where such an instruction is necessary to correct a special verdict under section 619. In this case, as in *Fibreboard*, the court was presented with a situation where it was compelled to instruct the jury on the legal effect of their original answers, their corrections, or both. If the instruction on the legal effect of the jury's answers to questions Nos. 7 and 10 had not been given, the jury would not

---

[11]We note a federal court has also held an instruction on the legal effect of answers on special verdict is forms proper where necessary to avoid an inconsistent or defective verdict. (See *In re Aircrash in Bali, Indonesia* (9th Cir. 1989) 871 F.2d 812, 815.)

have understood the import of their original answer, and would have been left to speculate as to the nature of the inconsistency in the verdict. The court's effort to remedy the inconsistency in a manner that clarified instead of further confusing the issues was not an abuse of discretion. We do not believe the Legislature intended to severely limit the court's exercise of its broad discretionary powers under section 619 by prohibiting instructions on the legal effect of verdict answers, even where necessary to correct a defective verdict. To do so would frustrate the very purpose of section 619 by preventing correction of erroneous or incomplete verdicts, and make it in many instances meaningless.[12] (*Wells Fargo Bank v. Goldzband* (1997) 53 Cal.App.4th 596, 617-618 [61 Cal.Rptr.2d 826].)

## II. *Deliberations of the Alternate Juror*

CCI contends the court committed prejudicial error by failing to grant its motion for new trial based upon the fact the jury deliberated only 49 minutes before reaching a verdict after the second alternate juror was seated. We reject this contention as there is no minimum time a juror must deliberate and the record shows that the alternate juror did deliberate before the jury reached its verdict.

### A. *Standard of Review*

The issue of jury misconduct by the second alternate juror in allegedly not deliberating before reaching a verdict in Mendoza's favor is reviewed de novo, the Court of Appeal independently reviewing the record. (*Vomaska v. City of San Diego* (1997) 55 Cal.App.4th 905, 912 [64 Cal.Rptr.2d 492] (*Vomaska*).)

### B. *Analysis*

"Trial by jury is an inviolate right and shall be secured to all." (Cal. Const., art. I, § 16.) While this right may not be abridged, the Legislature may place upon it reasonable restrictions or conditions. (*People v. Collins* (1976) 17 Cal.3d 687, 692 [131 Cal.Rptr. 782, 552 P.2d 742].)

Section 613 states that "[w]hen the case is finally submitted to the jury, *they may decide in Court* or retire for deliberation." (Italics added.) This court has held the plain language of section 613 indicates a jury may decide

---

[12]This is not to say such an instruction could not be otherwise prejudicial if it is biased, inflammatory or reflects in some manner how the court wishes the jury to act. (See *Crowe v. Sacks, supra,* 44 Cal.2d at p. 598.) As discussed above, however, the court was unbiased in the language of its instruction.

a case immediately following the court's instructions. (*Vomaska, supra,* 55 Cal.App.4th at p. 910.) As we stated in *Vomaska,* "a party's constitutional right to have his case decided by a jury [does not include] the right to compel jurors to discuss issues which they have chosen to decide without discussion." (*Id.* at p. 911, fn. omitted.) Further, short jury deliberations do not show a failure by a jury to fully consider a case. (*Perdue v. Hopper Truck Lines* (1963) 221 Cal.App.2d 604, 609 [34 Cal.Rptr. 640].)

In *Vomaska,* this court held a jury's decision on a verdict 10 to 15 minutes after beginning deliberations, before receiving exhibits, and without discussing the case before their vote, did not deprive a party of its constitutional right to a jury trial. (*Vomaska, supra,* 55 Cal.App.4th at pp. 909-911.) In reaching this decision, we adopted the following language from an Ohio case: " ' "While the verdict should be the result of sound judgment, dispassionate consideration, and conscientious reflection, and the jury should, if necessary, deliberate patiently and long on the issues which have been submitted to them, yet, where the law does not positively prescribe the length of time a jury shall consider their verdict, *they may render a valid verdict without retiring,* or on very brief deliberation after retiring, although the court may, in its discretion, cause the jury to reconsider the case if their decision is so hasty as to indicate a flippant disregard of their duties." ' " (*Id.* at p. 913, quoting *Val Decker Packing Co. v. Treon* (1950) 88 Ohio App. 479 [97 N.E.2d 696, 701], italics added.)

 Here, nothing in the jury's deliberation establishes juror misconduct. After the second alternate was seated, the jury deliberated over three times as long as the jury in *Vomaska.* The court properly instructed the jury on their duty to deliberate anew after the second alternate juror was seated. Further, CCI does not submit any evidence of any actual failure to deliberate or some other kind of misconduct that occurred during deliberations. In fact, the undisputed declaration of the foreperson establishes the jury did deliberate each question on the special verdict form after the alternate was seated.[13]

CCI contends the jury could not have deliberated anew after the second alternate was seated as it had been deliberating for several days prior to that time. This contention is speculation, and contradicted by the undisputed declaration of the foreperson. Further, it ignores the fact the second alternate was present during the trial and observed the witnesses and evidence. There is nothing in the law that prevented the second alternate from reaching his

---

[13]We may consider this declaration as it refers to objectively ascertainable statements, conduct, conditions or events, not the subjective reasoning process of the jury. (*Vomaska, supra,* 55 Cal.App.4th at p. 910.)

decision in a short period of time, just as it was proper for the original jury to reach its decision in several days time. Moreover, there is nothing in the instruction requiring jurors to deliberate anew that requires them to thereafter deliberate for the same amount of time as before the alternate is seated.

CCI relies upon *Griesel v. Dart Industries, Inc.* (1979 ) 23 Cal.3d 578 [153 Cal.Rptr. 213, 591 P.2d 503] and *Vaughn v. Noor* (1991) 233 Cal.App.3d 14 [284 Cal.Rptr. 222] for the proposition that the jury's deliberation for a short period of time after an alternate is seated constitutes reversible error. However, CCI misstates the holdings in those cases, which do not address the issue presented here. Both cases held only that it was error not to instruct the jury to begin deliberations anew after the alternate was seated. (*Griesel v. Dart Industries, Inc., supra,* 23 Cal.3d at pp. 583-584; *Vaughn v. Noor, supra,* 233 Cal.App.3d at pp. 20-22.) There is no dispute such an instruction was properly given here.

No jury misconduct occurred as a result of the length of time the jury deliberated after the seating of the second alternate juror.

### III. *Court's Instruction on Withdrawn Warranty Claim Letter*

CCI contends the court committed reversible error in refusing to instruct the jury to disregard all evidence of warranty claims for brake failures on CCI carts which the court had previously ordered withdrawn from consideration following CCI's motion for nonsuit on Mendoza's negligence claim. We reject this contention for two reasons.

### A. *Standard of Review*

As we stated in part I.B., *ante,* in order to reverse a judgment on the basis of instructional error, CCI must show the instruction was erroneous and so prejudicial as to result in a miscarriage of justice. (*Soule v. General Motors Corp., supra,* 8 Cal.4th at p. 574.)

### B. *Analysis*

CCI's contention it objected to instructing the jury to disregard only the one warranty document the jury asked about and requested an instruction to disregard all warranty evidence appears nowhere in the record. CCI's only citation in support of its assertion it raised this issue below is to CCI's own points and authorities in support of a posttrial motion. This is not evidence we may consider on this appeal. (*Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869, 884 [271 Cal.Rptr. 513].) By failing to preserve this

issue below, CCI has waived the right to assert error on appeal. (*Holling v. Chandler* (1966) 241 Cal.App.2d 19, 25 [50 Cal.Rptr. 219].) In its reply brief CCI does not respond to Mendoza's argument that this claimed error was waived.

Further, even were we to consider this issue on the merits, we find no error in the court's instruction. When the jury asked a question regarding one particular warranty claim letter, the court instructed the jury it "was no longer relevant as to any issue" and it was not to, "consider it for any purpose." This instruction was accurate, proper and clearly was not so unduly prejudicial as to result in a miscarriage of justice. There is no evidence the jury considered any other warranty letters. Upon this record we cannot find prejudice occurred.

Accordingly, this court finds no reversible error in the court's instruction on the warranty claim letter.

### IV. *Substantial Evidence of Defect and Causation**

. . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.[14]

Kremer, P. J., and Huffman, J., concurred.

A petition for a rehearing was denied June 27, 2000, and the petition of appellant Club Car, Inc., for review by the Supreme Court was denied August 23, 2000.

---

*See footnote 1, *ante*, page 287.

[14]As the judgment is affirmed, we need not address Mendoza's appeal, which raises issues relevant only if the judgment against CCI were reversed.