Filed  3/20/13  Marriage of Shorr CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Marriage of RENEE and ALAN SHORR. | B232176<br><br>(Los Angeles County<br>Super. Ct. No. BD458883) |
| RENEE M. BAZAR SHORR,<br><br>    Appellant,<br><br>    v.<br><br>ALAN SHORR,<br><br>    Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark Juhas, Judge.  Affirmed.

Renee M. Bazar, in pro. per., for Appellant.

Alan Shorr, in pro. per., for Respondent.

_____

Renee M. Bazar (formerly Shorr) appeals from the judgment entered by the superior court following trial of the property issues remaining after the June 2008 status-only dissolution of her marriage to Alan Shorr.  Renee[1] contends the trial court erred as a matter of law in ordering her to reimburse Alan for the cost of her health insurance after April 2010 and in finding she had breached her fiduciary duty to Alan by failing to consent in 2008 to a sale of their community interest in Alan's investment company that subsequently failed in the economic downturn.  In addition, Renee contends the court abused its discretion by failing to order Alan to produce further documents relating to the parties' assets and Alan's income and by refusing to continue the trial to allow Renee more time to ensure Alan was not hiding community assets.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Status Dissolution Judgment and Denial of Alan's Request To Sell His Business*

In January 2007 Renee petitioned for dissolution of her nearly 19-year marriage to Alan.  On June 3, 2008 the superior court entered a judgment of dissolution, status only, pursuant to Family Code section 2337, subdivision (a).[2]  Under section 2337, subdivision (c)(2), the court ordered Alan, pending entry of judgment on all remaining issues, to maintain health insurance for Renee, among other conditions.[3]

---

[1]    Although Renee and Alan no longer share the same last name, the matter was filed under Renee's married name.  Accordingly, we refer to them by their first names for convenience and clarity.  (See *Jones v. ConocoPhillips Co.* (2011) 198 Cal.App.4th 1187, 1191, fn. 1.)

[2]    Family Code section 2337, subdivision (a), provides:  "In a proceeding for dissolution of marriage, the court, upon noticed motion, may sever and grant an early and separate trial on the issue of dissolution of the status of the marriage apart from other issues."

Statutory references are to the Family Code unless otherwise indicated.

[3]    Section 2337, subdivision (c)(2), provides:  "(c)  The court may impose upon a party any of the following conditions on granting a severance of the issue of the dissolution of the status of the marriage, and in case of that party's death, an order of any of the following conditions continues to be binding upon that party's estate:  [¶] . . . [¶] (2)  Until judgment has been entered on all remaining issues and has become final, the

2

About this same time Alan asked the court to approve sale of his interest in an investment company known as AFA Holdings (concededly a community asset) to his business partner without Renee's consent. According to Alan, his relationship with his business partner had deteriorated to the point the community would get no value from the business if the proffered deal was not accepted. Notwithstanding these concerns, the court refused to approve the sale because Alan had failed to carry his burden of demonstrating the urgency for the sale, the justification for the proposed price of approximately $1.2 million or any security provisions that would protect Renee's income stream in the future. (See §§ 1101, subd. (e); 2108.)

In August 2008 Alan again petitioned for court approval of the sale of his business interest to his partner. The court again denied the request based on Renee's objection, concluding the proposed deal contained inadequate security to protect Renee's interests. At the hearing the court ruled in Renee's favor but cautioned she could be liable for breach of her fiduciary duty to Alan by not allowing the sale to go forward.

At the same hearing the court scheduled trial on the remaining issues for February 2009.

### 2. *Discovery Disputes and Trial Delays*

In May 2008 Renee served her first set of document demands. Alan responded by producing his tax returns for the years 2003 through 2007, as well as his bank records, credit card records and business records for the years 2005 through 2007. The record

---

party shall maintain all existing health and medical insurance coverage for the other party and any minor children as named dependents, so long as the party is eligible to do so. If at any time during this period the party is not eligible to maintain that coverage, the party shall, at the party's sole expense, provide and maintain health and medical insurance coverage that is comparable to the existing health and medical insurance coverage to the extent it is available. To the extent that coverage is not available, the party shall be responsible to pay, and shall demonstrate to the court's satisfaction the ability to pay, for the health and medical care for the other party and the minor children, to the extent that care would have been covered by the existing insurance coverage but for the dissolution of marital status, and shall otherwise indemnify and hold the other party harmless from any adverse consequences resulting from the loss or reduction of the existing coverage. . . ."

3

does not reveal why the February 2009 trial date was continued; but, according to Alan, it was continued until March 2010 at Renee's request. In July 2009, in response to a request by Renee's accountant, Alan produced additional tax returns, the general ledger for his business and his 2008 financial statements.

On January 5, 2010 the parties entered into a voluntary settlement agreement with respect to spousal support and some property issues, but were not able to agree on the division of the AFA entities, various claims for reimbursement or attorney fees. Shortly thereafter, Renee's counsel filed a motion to be relieved based on the deterioration of his relationship with Renee and requested a continuance of the trial on the remaining issues to allow new counsel to be retained. At a hearing on January 28, 2010 the court stated it would continue the trial date subject to the condition the cost of the insurance premiums incurred after April 1, 2010 would be chargeable to Renee at trial. At a hearing on March 1, 2010 the court granted the motion of Renee's counsel to be relieved and set a new trial date of August 25, 2010.

Meanwhile, Renee had served another set of document demands and interrogatories, which sought a number of items Alan claimed had either been previously produced or were no longer relevant in light of the voluntary settlement agreement. Alan supplemented his earlier discovery responses by producing his commission statements for 2007 to 2009, additional personal, corporate and partnership tax returns for the years 2006 to 2008, and various business records, including contracts.

On March 25, 2010 Renee filed a motion to compel further responses to her demands. Alan contended he had produced all tax returns from 2004 to 2009, retirement account records, insurance records, credit card statements, bank statements and relevant business records. At the May 3, 2010 hearing on the motion, the court ordered Alan to sign and file a declaration under penalty of perjury affirming "there are no additional documents responsive to [Renee's document demands] in his possession, custody, or control, that have not already been provided to [Renee]." Alan did so.

On June 7, 2010 Renee filed four ex parte motions to compel discovery, seeking documents from Fidelity Investments, an order compelling Alan's assistant to appear for

4

a deposition, the appointment of a discovery referee to be paid for by Alan and the creation of a blocked account to compensate her for monies she claimed had been wrongfully used by Alan. Ex parte relief was denied, and the motions were set for hearing on July 7, 2010. In keeping with Alan's objections, the court ordered Fidelity Investments to produce documents in Alan's name but denied discovery as to Alan's clients. The deposition was set for August 2010, a date agreed to by the witness; and the motion for a discovery referee was denied.

Renee again sought a continuance of the trial scheduled for August 25, 2010. The continuance was granted with the admonition no further continuances would be granted. Trial was continued to January 6, 2011. On December 14, 2010 Renee moved to set aside the voluntary settlement agreement and to reopen discovery. She followed this motion with a statement seeking to disqualify the trial judge based on his personal bias toward her. (See Code Civ. Proc., § 170.3, subd. (c).) The court denied the statement of disqualification on December 22, 2010. Renee's petition for writ of mandate and for immediate stay was denied by this court on January 5, 2011. (See *Shorr v. Superior Court* (Jan. 5, 2011, B229960) [order].)

3. *Trial on the Remaining Issues*

On January 6, 2011 Alan appeared for trial. Renee did not appear or notify the court of the reason for her absence. She also had not filed a trial brief. Alan proceeded to prove his case. In support of his claim Renee had breached her fiduciary duty by blocking the sale of the community's interest in AFA Holdings, Alan submitted the proposed sale agreement that valued the interest at $1.2 million and evidence the company had ceased operations in May 2010. Based on this showing, the court awarded Alan $600,000 in damages arising from Renee's breach. The court also ordered Renee to reimburse Alan for certain expenditures, including the cost of Renee's health insurance premiums from April 1, 2010 through the trial date, an amount set at $3,743.

On March 2, 2011 Renee filed a motion to strike or set aside the judgment on the ground the court lacked jurisdiction because there had been no final ruling on her motion

5

to disqualify the judge. She failed to appear at the April 11, 2011 hearing on the motion, and it was denied.

## CONTENTIONS

Renee contends the trial court abused its discretion by denying portions of her motions to compel further discovery and refusing to continue the January 2011 trial date, which resulted in a deprivation of her right to due process. Renee also contends the order conditioning the January 2010 trial continuance on termination of Alan's obligation to underwrite her health insurance premiums and the judgment charging her with the loss of $600,000 resulting from her refusal to consent to the sale of Alan's business in June 2008 were in excess of the court's jurisdiction and thus void.

## DISCUSSION

1. *The Trial Court Did Not Abuse Its Broad Discretion in Rejecting Renee's Further Discovery Demands*

A discovery order is normally reviewed under the deferential abuse of discretion standard. (See *John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1186; *Pirjada v. Superior Court* (2011) 201 Cal.App.4th 1074, 1085.) "[A] reviewing court generally will not substitute its opinion for that of the trial court and will not set aside the trial court's decision unless 'there was "no legal justification" for the order granting or denying the discovery in question.'" (*Pirjada,* at p. 1085.) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478.)

The gist of Renee's arguments about the trial court's discovery orders relates to her contention Alan was hiding assets and had perjured himself in declarations provided to the court. According to Renee, Alan's conduct and the court's failure to intervene effectively deprived her of sufficient funds to retain legal counsel and impaired her ability to prepare for trial.

In particular, Renee points to Alan's refusal to produce documents related to an account his company, Shorr Capital Management, held with Fidelity Investments. According to Alan, the account was an omnibus business account he used to process

6

client funds against which Alan billed quarterly to fund business operations of the company. Unearned funds were returned to clients. Alan objected to Renee's subpoena to Fidelity on the ground of customer privacy. The court ultimately ordered Fidelity to produce Shorr Capital Management account documents but sustained Fidelity's objection to production of client account statements.

Notwithstanding her receipt of Shorr Capital documents, Renee argues the court should have sanctioned both Fidelity and Alan and appointed a discovery referee to ensure Alan could not continue to conceal documents. The record, however, fails to support the sweeping allegations Renee makes about discovery abuse and the court's failure to sanction Alan's conduct. The court addressed Renee's contentions and imposed a reasonable accommodation of her legitimate discovery needs and the concerns raised by Alan and Fidelity on behalf of Alan's clients. There was no abuse of discretion with respect to this order or any of the other discovery orders challenged by Renee.

2. *The Trial Court's Order Conditioning the January 2010 Trial Continuance on Renee's Reimbursement of Insurance Costs Was Not Void*

As described, section 2337 allows the court to sever the issue of marital status and enter a judgment of dissolution while reserving jurisdiction over other issues. As a condition of severance the court may order that one spouse maintain the other's medical insurance until the case is finally resolved and indemnify the other for the consequences of a loss or reduction of existing coverage. (§ 2337, subd. (c)(2).) Such a judgment was entered in this case on June 3, 2008.

On January 28, 2010 Renee's counsel appeared at a hearing on an ex parte application to continue the trial and reopen discovery following the voluntary settlement conference. The trial court set the matter for hearing on March 1, 2010, ordered Renee to appear and noted it would agree to continue the trial only on the condition Renee reimburse Alan for the health insurance costs incurred after April 1, 2010. Although Renee appeared at the March 1, 2010 hearing and disputed the inference she had been responsible for the need to continue the trial, the court declined to lift the condition.

7

Renee contends this order was void because the status judgment was final and could not be altered at this juncture.

Renee, however, has misperceived the effect of the challenged order. The court did not alter the judgment, which ordered Alan "to maintain all existing health and medical insurance coverage for [Renee]." The court simply directed that the costs of Renee's health insurance after April 1, 2010 would be subject to reallocation in Alan's favor at trial unless Renee were to convince the court she should not be required to pay him back. The costs were charged to Renee at trial because she had delayed the trial on several occasions and then failed to appear and contest the allocation. There was no error. (See § 290 ["[a] judgment or order made or entered pursuant to this code may be enforced by the court . . . by any other order as the court in its discretion determines from time to time to be necessary"].)

3. *The Trial Court Did Not Abuse Its Discretion by Refusing To Continue the January 2011 Trial Date*

A trial continuance may be granted only upon an affirmative showing of good cause. (Cal. Rules of Court, rule 3.1332(c).) We review a court's decision denying a request for continuance under the deferential abuse of discretion standard. (*Foster v. Civil Service Com.* (1983) 142 Cal.App.3d 444, 448.) Under this standard the reviewing court will "only interfere with [the lower court's] ruling if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no judge reasonably could have reached the challenged result." (*Estate of Billings* (1991) 228 Cal.App.3d 426, 430.) The trial court abuses its discretion when "'it has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.'" (*Mendoza v. Club Car, Inc.* (2000) 81 Cal.App.4th 287, 301.)

"In determining whether a denial [of a continuance] was so arbitrary as to deny due process, the appellate court looks to the circumstances of each case and to the reasons presented for the request." (*People v. Frye* (1998) 18 Cal.4th 894, 1013, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421.) Factors to consider include ""the benefit which the moving party anticipates[,] . . . the likelihood that such

benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion.'"'" (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037; see also *People v. Howard* (1992) 1 Cal.4th 1132, 1171-1172 ["'[I]t is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel.' [Citation.] Instead, '[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'"].)

The record does not support Renee's contention the trial court abused its discretion or denied her fundamental rights by refusing to grant yet another continuance of the trial in December 2010. Renee commenced this proceeding in January 2007. The status judgment was obtained in June 2008; forensic accountants were retained; documents were exchanged; and the matter proceeded to a voluntary settlement conference before the scheduled March 2010 trial date. The case was then three years old and only a few issues remained unresolved.

Renee, however, became convinced Alan was hiding assets, even as it was disclosed Alan's investment business had crumbled as a result of the fiscal downturn. Her attorney, citing the deterioration of the attorney-client relationship, was forced to file a motion to withdraw. The court continued the trial to August 2010 but warned Renee no further continuances would be granted and conditioned the continuance on Renee's prospective reimbursement of health insurance costs incurred after April 1, 2010.

In ruling on the multiple motions to compel Renee filed in May 2010, the court expressed frustration with her assertions that Alan had withheld information and denied what it described as her overbroad discovery requests and her demands for a discovery referee.[4] With little to show from the supplemental discovery authorized by the court,

---

[4]     Alan was not without fault during these proceedings. Although he appears to have generally acquiesced to Renee's document demands, he appeared at his deposition in a disoriented state (which he blamed on cold medication) and claimed he could not recall his address.

Renee once again sought a continuance in August 2010. The trial was continued to January 2011. In December 2010, without representation and having been unable to establish malfeasance by Alan, Renee sought disqualification of the judge. She then failed to appear at trial or provide any excuse for her absence.

Nothing in this record suggests the court abused its discretion or violated Renee's due process rights in proceeding with the trial. Renee was afforded ample opportunity to prove her allegations. She failed to do so.

4. *The Trial Court Did Not Err in Awarding Alan $600,000 on His Cause of Action for Breach of Fiduciary Duty*

Married persons are subject to the general rules governing fiduciary relationships and owe one another a duty of the highest good faith and fair dealing. (§§ 721, subd. (b); 1100, subd. (e); see *Brewer v. Federici* (2001) 93 Cal.App.4th 1334, 1343-1344.) Section 1101, subdivision (a), creates a right of action by one spouse against the other for breach of fiduciary duty when the breaching spouse engages in conduct that impairs the value of the non-breaching spouse's interest in community property. Section 1101, subdivision (g), directs the court to award the non-breaching spouse an amount equal to 50 percent of the value of the impairment, plus attorney fees and costs: "The value of the asset shall be determined to be its highest value at the date of the breach of the fiduciary duty, the date of the sale or disposition of the asset, or the date of the award by the court." (See *In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 992 ["[w]hen . . . a spouse has breached [his or] her fiduciary duty, but not in a manner displaying fraud, malice, or oppression . . . section 1101, subdivision (g), governs the applicable remedies"].)

Alan's claim against Renee for breach of her fiduciary duty to him based on her refusal to consent to the sale of the community's interest in his company was tried to the court after Renee failed to appear. A court is authorized to proceed with trial when a litigant fails to appear so long as the litigant has received adequate notice of the trial. (Code Civ. Proc., § 594, subd. (a);[5] see also *Merrifield v. Edmonds* (1983) 146 Cal.App.3d

---

[5] "In superior courts either party may bring an issue to trial or to a hearing, and, in the absence of the adverse party, unless the court, for good cause, otherwise directs, may

336, 341 [when defendant answers complaint and receives proper notice of trial but does not appear, plaintiff may proceed with "uncontested" trial]; *Colony Bancorp of Malibu, Inc. v. Patel* (2012) 204 Cal.App.4th 410, 412 [rejecting claim trial court violated defendant's due process rights by proceeding with trial in absence of defendant and counsel who failed to return from lunch break at appointed time].) The trial court proceeded with trial in Renee's absence and, among other reimbursable amounts, imposed a charge of $600,000 based on her refusal to consent to the sale of the community's interest in the company in June 2008.

Renee contends the court's ruling was either void or voidable because she had twice defeated Alan's earlier attempts to obtain approval for the sale—final rulings, she claims, that were reviewable only on appeal and now insulate her from the adverse finding at trial on Alan's breach-of-fiduciary-duty claim. Contrary to Renee's contention, Alan's claim was not foreclosed by the earlier proceedings.[6]

To prevail on his earlier motions, Alan had to establish under section 1101, subdivision (e),[7] that the proposed sale of the asset was in the best interest of the

_____

proceed with the case and take a dismissal of the action, or a verdict, or judgment, as the case may require; provided, however, if the issue to be tried is an issue of fact, proof shall first be made to the satisfaction of the court that the adverse party has had 15 days' notice of such trial . . . . If the adverse party has served notice of trial upon the party seeking the dismissal, verdict, or judgment at least five days prior to the trial, the adverse party shall be deemed to have had notice." (Code Civ. Proc., § 594, subd. (a).) Renee does not contend she received inadequate notice of the trial.

[6] Even if the rulings on the earlier motions precluded the subsequent claim for breach of fiduciary duty, the judgment is not void. As the Supreme Court has explained, "A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable." (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56.) Here, the court did not lack subject matter jurisdiction. Any error was, at most, an act in excess of the court's jurisdiction, thus making the ruling voidable. (See *ibid.* ["[M]ost procedural errors are not jurisdictional. [Citations.] Once a court has established its power to hear a case, it may make errors with respect to areas of procedure, pleading, evidence, and substantive law."].)

[7] Section 1101, subdivision (e), provides: "In any transaction affecting community property in which the consent of both spouses is required, the court may, upon the motion

11

community and Renee had arbitrarily withheld her consent or, alternatively under section 2108,[8] that good cause existed to liquidate the community asset to avoid an unreasonable market or investment risk. The court rejected each motion on the ground Alan had failed to carry his burden of proof under these statutes.

Those rulings, however, did not determine, either expressly or by implication, that Renee had acted consistently with her fiduciary obligations or otherwise extinguish Alan's claim. While they might have aided Renee in successfully defending against Alan's fiduciary breach claim, she failed to appear at trial and contest his evidence. Based on the evidence presented, including the proposed sale agreement, there was ample support for the statutory award of 50 percent ($600,000) of the contractual price of the asset at the time Renee refused to consent to the transaction.

## DISPOSITION

The judgment is affirmed. Alan is to recover his costs on appeal.


PERLUSS, P. J.

We concur:


WOODS, J.                    JACKSON, J.

---

of a spouse, dispense with the requirement of the other spouse's consent if . . . (1) The proposed transaction is in the best interest of the community[; and] (2) Consent has been arbitrarily refused or cannot be obtained due to the physical incapacity, mental incapacity, or prolonged absence of the nonconsenting spouse."

[8]    Section 2108 provides: "At any time during the proceeding, the court has the authority, on application of a party and for good cause, to order the liquidation of community or quasi-community assets so as to avoid unreasonable market or investment risks, given the relative nature, scope, and extent of the community estate. . . ."

12