Filed 2/26/14

# CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CIARA VOLLARO, | B242544 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NC052344) |
| v. | |
| MAUREEN LISPI, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Judith A. Vander Lans, Judge. Affirmed in part and reversed in part with directions.

Winet, Patrick & Weaver, Randall L. Winet and Marilyn Perrin for Defendant and Appellant.

Cohen Law Group, H. Jason Cohen; The Kaufman Law Firm and Martin J. Kaufman for Plaintiff and Respondent.

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

Following a jury trial, the trial court entered judgment in favor of plaintiff Ciara Vollaro for damages sustained in an automobile accident. In this appeal from the judgment, defendant Maureen Lispi challenges the trial court's evidentiary rulings and rejection of her proposed special verdict form that would have required the jury to consider nonparty Noel Meredith's proportionate fault in allocating liability for noneconomic damages. Although we find no evidentiary error, we conclude that the error as to the special verdict form requires a partial new trial on apportionment of noneconomic damages.

## BACKGROUND

This action involves a January 9, 2007 automobile accident in which Lispi, the owner and driver of a Mitsubishi Galant, rear-ended a Honda Civic in which Vollaro was a passenger. The Honda's other occupants—owner Ann Reed and driver Meredith—are not parties to this action.

When the accident occurred, Lispi stopped to inquire if anyone was injured and to exchange the required information. At the time, Lispi was not informed of any personal injuries, but saw that the Honda's rear bumper and trunk were damaged. Lispi saw no damage to her own vehicle.

On January 8, 2009, Vollaro sued Lispi for personal injury damages. The complaint alleged that on January 9, 2007, Vollaro was riding in the back seat of a Honda Civic "travelling northbound on I-405. After exiting the freeway at Atlantic Ave., the vehicle came to a stop at a yield sign at the bottom of the off-ramp prior to merging right. While stopped, the vehicle was struck from behind by [Lispi's] vehicle, which was being operated by [Lispi] in a negligent, careless, and reckless fashion. As a direct and proximate cause of [Lispi's] negligence, [Vollaro] has suffered physical and emotional injuries and subsequent loss of wages."

At trial, the only eyewitness accounts of the accident were provided by Vollaro and Lispi. Consistent with the allegations of her complaint, Vollaro testified that the

2

Honda was stopped at a yield sign at the bottom of the off-ramp when it was suddenly rear-ended by Lispi's vehicle. She denied that the driver of the vehicle in which she was riding made a sudden, unexpected stop.

Lispi testified that when she exited the northbound 405 freeway at Atlantic Boulevard, the Honda was stopped at a yield sign at the bottom of the off-ramp, where it was waiting to merge onto the street. Lispi stopped behind the Honda. When the Honda moved forward, Lispi moved forward and stopped at the yield sign. Lispi looked over her shoulder and saw no oncoming traffic. Lispi looked forward and saw that the Honda was moving forward. As Lispi began accelerating, however, the Honda "stopped suddenly" in front of her for no apparent reason. Lispi stated, "After I accelerated I hit my brakes to stop my car and I was unable to avoid hitting the car in front of me."[1] Lispi did not see a turn signal, obstacle, animal, person, vehicle, or any other reason for the Honda "to stop suddenly" on the roadway.

Lispi testified that, although she was responsible for rear-ending the Honda, Meredith also was at fault for making a sudden stop for no apparent reason. In addition, Lispi testified that she did not believe Vollaro's injuries—a hernia that was surgically repaired[2] and a rib injury that will require future surgery—were sustained in the accident.

Based on Lispi's theory that both drivers were at fault in causing the accident, she submitted a proposed special verdict form that would have required the jury to consider the fault of each driver for purposes of allocating liability for Vollaro's noneconomic damages. Lispi requested special verdict findings as to: (1) whether Lispi was negligent and, if so, whether her negligence was a cause of injury to Vollaro; (2) whether Meredith was negligent and, if so, whether his negligence was a cause of injury to Vollaro; and, if

[1]    Lispi initially testified that she was "accelerating at the time that [her] car hit the other car." However, Lispi later clarified that she "hit [the] brakes" when the Honda stopped suddenly in front of her. She explained that because the earlier question did not ask whether she had tried to stop to avoid the collision, she "didn't get a chance to answer that question."

[2]    At the time of the accident, Vollaro was recovering from a recent gallbladder surgery.

3

both drivers were found to be negligent, (3) the percentage of fault attributable to each driver.

Vollaro objected to Lispi's proposed special verdict form, claiming that California law prohibits the apportionment of liability for noneconomic damages to a nonparty. Vollaro also argued that the sole evidence of Meredith's alleged negligence—Lispi's testimony that the Honda stopped suddenly for no apparent reason—was legally insufficient to support an allocation of fault to Meredith.

In response, Lispi argued that California law permits the apportionment of noneconomic damages to a nonparty. Lispi further objected that, unless the jury made special verdict findings on Meredith's proportionate fault, her arguments to the jury "that there is a minimum speed law, and that the car stopped for no reason" would be pointless.

Although the trial court rejected Lispi's proposed special verdict form, it instructed the jury on the minimum speed law (Veh. Code, § 22400), and Lispi's counsel read the minimum speed law in her closing argument.[3] Thus, the jury was informed of the applicable standard of care that applied to the alleged unsafe stop by Meredith, even though it was not asked to make a special verdict finding as to whether Meredith was partly at fault in causing the accident.

The jury returned special verdict findings that: (1) Lispi was negligent; (2) her negligence was a cause of injury to Vollaro; and (3) Vollaro had suffered $661,000 in

[3] Lispi's attorney read to the jury the second sentence of the minimum speed law, which states: "No person shall bring a vehicle to a complete stop upon a highway so as to impede or block the normal and reasonable movement of traffic unless the stop is necessary for safe operation or in compliance with law." (Veh. Code, § 22400, subd. (a).)

Although the term "highway" is not defined in Vehicle Code section 22400, it is defined elsewhere in the Vehicle Code as "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel. Highway includes street." (Veh. Code, § 360.)

As will be discussed later in this opinion, the first sentence of the minimum speed law, which was not read to the jury, provides: "No person shall drive upon a highway at such a slow speed as to impede or block the normal and reasonable movement of traffic unless the reduced speed is necessary for safe operation, because of a grade, or in compliance with law." (Veh. Code, § 22400, subd. (a).)

4

damages, comprised of $22,000 for past economic loss, $64,000 for future economic loss, $75,000 for past noneconomic loss, and $500,000 for future noneconomic loss. After the trial court entered judgment in accordance with the jury's findings, Lispi filed a timely appeal. Additional facts relevant to the issues on appeal are discussed below.

## DISCUSSION

### I.     The Rejection of Lispi's Proposed Special Verdict Form Constituted Prejudicial Error

"[A] special verdict is that by which the jury find the facts only, leaving the judgment to the court. The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the court but to draw from them conclusions of law." (Code Civ. Proc., § 624.)

"Unlike a general verdict (which merely *implies* findings on all issues in favor of the plaintiff or defendant), a special verdict presents to the jury each ultimate fact in the case. The jury must resolve all of the ultimate facts presented to it in the special verdict, so that 'nothing shall remain to the court but to draw from them conclusions of law.' (Code Civ. Proc., § 624.) [¶] The requirement that the jury must resolve every controverted issue is one of the recognized pitfalls of special verdicts. '[The] possibility of a defective or incomplete special verdict, or possibly no verdict at all, is much greater than with a general verdict that is tested by special findings . . . .' [Citation.]" (*Falls v. Superior Court* (1987) 194 Cal.App.3d 851, 854-855 (*Falls*).)

Lispi contends the trial court erred in rejecting her proposed special verdict form that would have required the jury to consider Meredith's proportionate fault for purposes of apportioning Vollaro's noneconomic damages. Lispi contends that: (1) because a defendant is liable only for the noneconomic damages directly attributable to his or her percentage of fault, the jury may apportion liability for noneconomic damages against a nonparty; (2) because her testimony created a disputed issue of fact as to Meredith's

5

violation of the minimum speed law, the trial court erred in rejecting her proposed special verdict form; and (3) she preserved the issue for appellate review. For the reasons that follow, we agree.

A. *Under Proposition 51, a Defendant Is Liable Only for the Noneconomic Damages Directly Attributable to His or Her Own Percentage of Fault*

In 1986, the voters enacted Proposition 51, the Fair Responsibility Act, which abolished joint and several liability for noneconomic damages in personal injury cases. Proposition 51, which amended Civil Code section 1431 and added Civil Code sections 1431.1 through 1431.5,[4] "retains the joint liability of all tortfeasors, regardless of their respective shares of fault, with respect to all objectively provable expenses and monetary losses. On the other hand, the more intangible and subjective categories of damage were limited by [section 1431.2] to a rule of strict proportionate liability." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 600.) With respect to economic damages, codefendants are jointly and severally liable, but with respect to noneconomic damages, liability is several but not joint: "each defendant is liable for only that portion of the plaintiff's noneconomic damages which is commensurate with that defendant's degree of fault for the injury." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1198.)

---

[4] Civil Code section 1431.2 provides: "(a) In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount.

"(b)(1) For purposes of this section, the term 'economic damages' means objectively verifiable monetary losses including medical expenses, loss of earnings, burial costs, loss of use of property, costs of repair or replacement, costs of obtaining substitute domestic services, loss of employment and loss of business or employment opportunities.

"(2) For the purposes of this section, the term 'non-economic damages' means subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation."

In *DaFonte v. Up-Right, Inc.*, *supra*, 2 Cal.4th 593, the California Supreme Court considered the effect of Proposition 51 on a defendant's joint and several liability for personal injury damages sustained by the employee of another. The court concluded that under Proposition 51, "defendants no longer have to pay an injured employee's noneconomic damages caused by the fault of another, and the employee, like any other tort victim, bears the resulting risk of loss." (*Id.* at p. 603.) The court stated that "[w]ith respect to these noneconomic damages, the plaintiff alone now assumes the risk that a proportionate contribution cannot be obtained from each person responsible for the injury. [Citation.]" (*Id.* at p. 600.) This limitation, which applies in any action for personal injury, property damage, or wrongful death that is based on principles of comparative fault, is consistent with the initiative's purpose of modifying the "unfairness" and "inequities" of the former tort recovery system where defendants with slight fault could be "saddled with large damage awards mainly attributable to the greater fault of others who were able to escape their full proportionate contribution. [Citation.]" (*Id.* at p. 599; *Hernandez v. Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1804-1805.)

In short, under Proposition 51, an injured plaintiff bears the entire risk of loss for any unpaid noneconomic damages attributable to a tortfeasor who has not been sued or is statutorily immune.[5] (*Mendoza v. Club Car, Inc.* (2000) 81 Cal.App.4th 287, 305.) We therefore conclude that Vollaro bears the entire risk of loss for any unpaid noneconomic damages attributable to Meredith, who was not sued. Accordingly, Lispi's failure to file a cross-complaint against Meredith does not preclude Lispi from seeking an apportionment of liability for noneconomic damages.

---

[5] The proposition that a jury may apportion liability to a nonparty has been adopted in the Judicial Council of California Civil Jury Instructions (CACI) special verdict form applicable to negligence cases. (See CACI Verdict Form 402 and CACI Instruction No. 406 ["[Verdict Form] 402 is designed to compare the conduct of all defendants, the conduct of the plaintiff, and the conduct of any nonparty tortfeasors. [¶] . . . [¶] . . . 'Nonparties' include the universe of tortfeasors who are not present at trial, including defendants who settled before trial and nonjoined alleged tortfeasors. (*Dafonte v. Up-Right*[, *supra*,] 2 Cal.4th 593, 603.)"].)

7

*B.*  *Because Lispi's Testimony Created Disputed Issues of Fact as to Meredith's Violation of the Minimum Speed Law, the Trial Court Erred in Rejecting Lispi's Proposed Special Verdict Form*

The trial court rejected Lispi's special verdict form based on Vollaro's argument that the evidence failed to support a finding of negligence against Meredith.  We conclude, however, that Lispi's testimony was sufficient to create disputed issues of fact as to Meredith's violation of the minimum speed law and, therefore, the trial court erred in rejecting Lispi's proposed special verdict form.

1.  The *Seaton* Case

In *Seaton v. Spence* (1963) 215 Cal.App.2d 761 (*Seaton*), the appellate court concluded that the testimony of defendant Darrel Spence, the owner and driver of a vehicle that rear-ended plaintiff Robert Seaton's truck, was sufficient to establish that Seaton was driving at such a low speed that he was obstructing traffic in violation of the minimum speed law.

Spence testified that he was driving on the highway at 60 to 62 miles per hour when he briefly took his eyes off the road.  (*Seaton*, *supra*, 215 Cal.App.2d at pp. 764-765.)  During that short interval, the car in front of Spence changed lanes.  When Spence returned his attention to the road, he saw that he was quickly approaching Seaton's truck, which was going 10 to 20 miles per hour and was only "75 to 100 feet in front of him." (*Id.* at p. 764.)  Although Spence immediately applied the brakes, he was unable to avoid rear-ending Seaton's truck.

Spence argued at trial that Seaton's dangerously slow speed was impeding the normal and reasonable movement of traffic, in violation of the minimum speed law. Spence contended that Seaton's slow driving constituted contributory negligence, which

8

at the time operated as a complete bar to an injured plaintiff's recovery.[6] (*Seaton*, *supra*, 215 Cal.App.2d at p. 765.) The jury found in favor of Spence, and the trial court entered judgment accordingly.

In his appeal from the judgment, Seaton argued that Spence's testimony was insufficient to prove that Seaton had violated the minimum speed law. The appellate court disagreed, stating that Spence was "a competent witness to testify to the speed of [Seaton's] truck," and the fact that Spence's "observation was momentary goes to the weight of the evidence rather than its admissibility. [Citations.]" (*Seaton*, *supra*, 215 Cal.App.2d at p. 766.)

The appellate court further stated: "The implied finding of the jury that [Seaton's] slow driving was contributory negligence is supported by section 22400 of the Vehicle Code which provides in part: [¶] '(a) No person shall drive upon a highway at such a slow speed as to impede or block the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or because upon a grade or in compliance with law.' [¶] The jury could have concluded that by driving 10 to 20 miles per hour [Seaton] violated that section. Such a violation would raise a presumption of negligence. [Citation.]" (*Seaton*, *supra*, 215 Cal.App.2d at p. 766.)

### 2. Analysis

The primary issue in this case was whether Lispi, who had only a brief moment before the collision to observe the Honda, was a credible witness concerning the Honda's sudden stop for no apparent reason. As in *Seaton*, this issue was a jury question. "Under all but the most limited circumstances, credibility of witnesses is a question of fact to be

_____

[6]    As the Supreme Court stated in *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 582: "[I]n *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, we concluded that the harsh and much criticized contributory negligence doctrine, which totally barred an injured person from recovering damages whenever his own negligence had contributed in any degree to the injury, should be replaced in this state by a rule of comparative negligence, under which an injured individual's recovery is simply proportionately diminished, rather than completely eliminated, when he is partially responsible for the injury."

resolved by the jury." (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1001.) "[I]t is well settled that the testimony of one witness entitled to credit is sufficient to establish a fact in a civil case. [Citation.]" (*Minikin v. Hendrix* (1940) 15 Cal.2d 338, 341.) "Except where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact." (Evid. Code, § 411.)

Vollaro cites *Wilson v. Ritto* (2003) 105 Cal.App.4th 361, 367, for the principle that "*unless there is substantial evidence that an individual is at fault*, *there can be no apportionment of damages to that individual*." (Italics added.) However, Vollaro does not explain why Lispi's percipient testimony concerning the Honda's unsafe stop was insufficient to establish a violation of the minimum speed law. Vollaro relies on the language quoted above without addressing the fact that a different standard of care applies to medical malpractice cases such as *Wilson*. *Wilson* stands for the proposition that "a nonparty medical doctor cannot be found comparatively at fault in a personal injury action unless the defendant proves with expert testimony the doctor failed to meet the applicable standard of care." (*Chakalis v. Elevator Solutions*, *Inc.* (2012) 205 Cal.App.4th 1557, 1561.) Because this is not a professional malpractice action, *Wilson* sheds no light on whether Lispi's testimony provided substantial evidence of Meredith's violation of the minimum speed law.

If a jury were to find, based on Lispi's testimony, that Meredith had violated the minimum speed law, such violation would give rise to a presumption of negligence. (*Seaton*, *supra*, 215 Cal.App.2d at p. 765.)[7] Because the jury was not asked to return a

---

[7]     As we stated in *Spriesterbach v. Holland* (2013) 215 Cal.App.4th 255 at page 263: "Where a statute establishes a party's duty, '"proof of the [party's] violation of a statutory standard of conduct raises a presumption of negligence that may be rebutted only by evidence establishing a justification or excuse for the statutory violation." (*Ramirez v. Plough*, *Inc.* (1993) 6 Cal.4th 539, 547.) This rule, generally known as the doctrine of negligence per se, means that where the court has adopted the conduct prescribed by statute as the standard of care for a reasonable person, a violation of the statute is presumed to be negligence. (*Casey v. Russell* (1982) 138 Cal.App.3d 379, 383.) [¶] The negligence per se doctrine, as codified in Evidence Code section 669, creates a presumption of negligence if four elements are established: "(1) the [party opposing a

10

special verdict finding on the disputed issues of Meredith's negligence, causation, and proportionate fault, the special verdict findings are incomplete as to Lispi's share of noneconomic damages.

The next question is whether the incomplete special verdict findings were prejudicial. In answering that question, we find the court's discussion in *Falls*, *supra*, 194 Cal.App.3d 851, 855, concerning the prejudice resulting from an incomplete special verdict to be instructive.

In *Falls*, a personal injury action, the jury received a special verdict form similar to the one that was requested by Lispi in this case, requiring the jury to apportion negligence. However, the jury failed to answer all of the questions in the special verdict form and found only that the defendant was negligent and that such negligence was a cause of the plaintiff's injuries. The jury left unresolved the disputed issues of the plaintiff's comparative negligence, if any, and the negligence of another defendant who had settled with the plaintiff. Based on the jury's failure to answer all of the questions presented in the special verdict form, the trial court declared a mistrial.

The plaintiff petitioned for a writ of mandate to compel the trial court to enter a partial verdict against the defendant on the issues of liability and proximate cause. Division Five of this district denied the petition, stating, "The jury reached a verdict on only two of [six] ultimate facts. While the jury may have resolved the issue of

---

finding of negligence per se] violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." (*Galvez v. Frields* (2001) 88 Cal.App.4th 1410, 1420.) The first two elements are questions of fact, while the latter two are questions of law. (*Ibid*.)' (*Spates v. Dameron Hospital Assn*. (2003) 114 Cal.App.4th 208, 218.) If the party seeking to prove negligence per se establishes a presumption of negligence, the burden then shifts to the other party to rebut the presumption by proof that, among other things, '[t]he person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law . . . .' (Evid. Code, § 669, subd. (b)(1).)"

11

defendant's negligence, it did not 'resolve the issue of liability in plaintiff's favor,' since in order to do so it would have to reach the question of plaintiff's comparative negligence, if any, or the contributory negligence of the settling defendant, Lakewood Center Mall. The liability issue as it now stands is like a puzzle with pieces missing; the picture is not complete." (*Falls*, *supra*, 194 Cal.App.3d at p. 855, fns. omitted.)

The jury's partial verdict, the court stated, "'was not dispositive of the liability issue and percentage of fault,' and therefore the jury had not determined sufficient ultimate facts upon which the court could render the 'partial verdict' requested by plaintiff. [¶] Although we appreciate plaintiff's frustration at losing an advantage fairly won, such a loss is an inherent risk of the special verdict. To award plaintiff a 'partial verdict' based upon a special verdict form which is fatally deficient would be contrary to the requirement that the jury must resolve *all* the ultimate facts presented. It would also severely prejudice defendant at the time of retrial, since the jury would be instructed that defendant's negligence was a fait accompli. The record presented here demonstrates that respondent court weighed all of these issues in concluding that a mistrial must be granted. There was no abuse of discretion." (*Falls*, *supra*, 194 Cal.App.3d at p. 855.)

Applying the above reasoning to this case, we conclude that the judgment must be reversed for a new trial on the issue of Meredith's proportionate fault. Given that Lispi's testimony, if believed by the jury, is sufficient to support a finding that Meredith violated the minimum speed law, thereby creating a presumption of negligence, the absence of any findings as to Meredith's proportionate fault has resulted in a defective or incomplete special verdict that is prejudicial to Lispi.

### 3.     The Issue Was Preserved for Appeal

Lispi contends that she preserved her objection to the special verdict form by submitting a proposed special verdict form that requested findings on the disputed issue of Meredith's proportionate fault. (See *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 530 [the failure to object to a special verdict form ordinarily constitutes a waiver of any objection to the form]; *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1287 [the

12

failure to submit a proposed special verdict form that addresses the purported defects in the special verdict form can result in a waiver].) Vollaro argues, however, that Lispi waived the right to a finding on the issue of apportionment through her testimony and interrogatory responses. We conclude there was no waiver.

Vollaro cites Lispi's testimony—that she was accelerating at the time of impact and was responsible for the accident and the injuries sustained by the people in the Honda—as evidence of waiver. However, this contention ignores Lispi's testimony that she braked but could not avoid the collision because Meredith had made an unsafe stop for no apparent reason. This contention also ignores Lispi's testimony in which she denied that Vollaro's injuries were caused by the accident. We therefore conclude that Lispi's testimony, taken as a whole, does not support a finding of waiver.

Vollaro also relies on Lispi's verified interrogatory responses—her failure to identify anyone else who had caused the accident and her failure to list Meredith's comparative negligence as an affirmative defense—as evidence of waiver. However, this contention ignores Lispi's interrogatory response that Meredith was partly at fault for making a sudden stop for no apparent reason.[8] We therefore conclude that Vollaro's interrogatory responses, taken as a whole, do not support a finding of waiver.

Finally, Vollaro relies on Lispi's failure to depose Meredith before trial as evidence of waiver. As we previously discussed, however, Lispi's testimony, if believed by the jury, was sufficient to establish the alleged violation of the unsafe speed law without eliciting any testimony from Meredith. (See *Minikin v. Hendrix*, *supra*, 15 Cal.2d at p. 341 ["the testimony of one witness entitled to credit is sufficient to establish a fact in a civil case"].) We conclude there was no waiver.

---

[8]     Vollaro stated in her interrogatory response: "Defendant came to a complete stop behind plaintiff's vehicle. When oncoming traffic cleared, plaintiff's vehicle began moving forward. Defendant also began moving forward when suddenly and for no apparent reason, plaintiff's vehicle stopped. Defendant applied her brakes but was unable to stop in time. The front end of defendant's vehicle came in contact with the rear end of plaintiff's vehicle."

13

4.      Vollaro's Reliance on Lispi's Failure to Request an Instruction on
        Apportionment Is Misplaced

In her respondent's brief, Vollaro argues that any error with regard to the special verdict form was rendered moot by Lispi's failure to request an instruction on apportionment. Vollaro's contention, as we understand it, is that because Lispi did not request an instruction on apportionment, no instruction on apportionment was given, and therefore, any apportionment of liability would have rendered the verdict erroneous on the ground that it was contrary to the instructions.

In support of her contention, Vollaro cites *Sherwood v. Rossini* (1968) 264 Cal.App.2d 926 (*Sherwood*), which stated that "a verdict which is patently contrary to the court's instructions on damages does not cover or comprehend the issues submitted and is therefore insufficient." (*Id.* at p. 929.) In that case, the jury was instructed that because the defendant was not contesting liability for the plaintiff's injuries, the only issue to be determined was the amount of the plaintiff's damages. Notwithstanding this instruction, the jury returned a verdict of zero damages. The court sent the jury back for further deliberations after advising the jury that its verdict was inconsistent with both the instructions and the verdict form. After the jury returned a second verdict of $3,000, the court entered a judgment in that amount. On appeal, the plaintiff argued that the first verdict was erroneous but not insufficient and, therefore, the trial court had erred in returning the jury for further deliberations. The appellate court rejected the plaintiff's contentions and affirmed the judgment.

Vollaro's reliance on *Sherwood* is unavailing. Significantly, the defendant in that case conceded the plaintiff's injuries were sustained in the car accident, defendant did not contest liability for those damages, and the jury was instructed accordingly. Under those circumstances, the verdict of zero was directly contrary to the court's instructions.

In this case, the jury was not instructed that Lispi accepted complete responsibility for the accident. There were *no* jury instructions regarding apportionment of liability. Therefore, unlike *Sherwood*, an apportionment of liability by the jury could not have been *contrary* to the instructions. Presumably, had the trial court agreed to include

14

apportionment of liability on the verdict form, either party could have requested an instruction regarding apportionment. However, the trial court did not, and Lispi's failure to request an instruction did not constitute waiver.

## II. Lispi's Contentions of Evidentiary Error Are Unsupported by the Record

Lispi contends that the trial court committed various evidentiary errors that deprived her of a fair trial. For the reasons stated below, we reject her contentions as unsupported by the record.

### A. *Standard of Review*

"The trial court is 'vested with broad discretion in ruling on the admissibility of evidence.' (*Smith v. Brown-Forman Distillers Corp.* (1987) 196 Cal.App.3d 503, 519.) '[T]he court's ruling will be upset only if there is a clear showing of an abuse of discretion.' (*Id.*, at p. 520.) '"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." [Citation.]' (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 272.)" (*Tudor Ranches*, *Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431.)

"The trial court's error in excluding evidence is grounds for reversing a judgment only if the party appealing demonstrates a 'miscarriage of justice'—that is, that a different result would have been probable if the error had not occurred. ([Evid. Code,] § 354 ['[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice']; Code Civ. Proc., § 475 ['[n]o judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling,

instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed']; *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069; see *City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 51-52 [prejudice will not be presumed; burden rests with party claiming error to demonstrate not only error, but also a resulting miscarriage of justice].)" (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480, fn. omitted.)

### B. The 2006 Honda Civic Back Seat Assembly

Lispi contends that the trial erroneously admitted a 2006 Honda Civic back seat assembly as an exemplar[9] of the seat involved in the accident. We conclude that Lispi has failed to establish that the trial court's ruling constituted an abuse of discretion.

#### 1. Additional Relevant Facts

In February 2010, Lispi deposed Vollaro's accident reconstruction expert, John Hinger, and inquired as to the exhibits that he intended to use at trial. Hinger replied that he had not discussed the matter with Vollaro's attorney, but he believed the "exhibits would be made up of the materials" that were produced at the deposition.

In July 2010, Vollaro provided Lispi with an exhibit list that mentioned a "2006 Honda Civic Hybrid backseat."

In April 2012, Vollaro brought the back seat exemplar to the courtroom to be used as an exhibit during Hinger's trial testimony. Lispi's attorney, Laurie Harrold, objected that the back seat exemplar was not mentioned in Hinger's deposition. Although Harrold recalled there was "some testimony in [Hinger's] deposition about the seatback," she stated that because the back seat exemplar was not discussed in the deposition, it should

---

**9** The accident reconstruction expert testified that an "exemplar part" is a part "that it is not the one from the vehicle [that was involved in the accident], but one from a vehicle similar to" it.

16

be excluded because she would have no way of knowing if Hinger would alter his testimony at trial.

Vollaro's attorney, Martin Kaufman, argued that because the back seat exemplar was disclosed in the July 2010 exhibit list, Harrold "had almost two full years to ask [Kaufman] about" it. Kaufman pointed out that the disclosure was made when "discovery was wide open" and Harrold "could have done something about it."

After Harrold reiterated that the back seat exemplar was never produced during Hinger's deposition, the trial court stated, "Well, I know, but it was evidently put on a list two years ago and any curiosity your office had could have been [satisfied] . . . at that time." Harrold replied, "I honestly . . . did not see it at that time. I know, that is my fault."

### 2. Analysis

Lispi contends that because she was unaware that the back seat exemplar would be used as an exhibit at trial, she is entitled to a new trial under Code of Civil Procedure section 657, subdivision 3, which authorizes a motion for new trial based on "[a]ccident or surprise, which ordinary prudence could not have guarded against." In support of her contention, Lispi cites *Hata v. Los Angeles County Harbor/UCLA Medical Center* (1995) 31 Cal.App.4th 1791, in which the Court of Appeal reversed an order granting a motion for new trial. In reversing the order for new trial, the appellate court concluded that the moving party, plaintiff Daryl Hata, had failed to establish grounds for relief under the new trial statute: "Considering the totality of Hata's knowledge and the information received, we fail to see how he, through no fault of his own, was suddenly and unexpectedly placed in a condition or situation resulting in detriment to him." (*Id.* at p. 1807.)

We do not believe the *Hata* decision assists Lispi's cause. Our record does not indicate that Lispi filed a motion for new trial under Code of Civil Procedure section 657, nor does Lispi mention such a motion in her appellate briefs. Accordingly, it is doubtful that section 657 applies to this case. In any event, the record indicates that Lispi had

17

ample opportunity before trial to inquire about the back seat exemplar, which was disclosed in July 2010. Her failure to inquire does not support a finding that, through no fault of her own, she was suddenly and unexpectedly placed in a condition or situation resulting in detriment.

### C. Solomon's Testimony Regarding the Bend in the Metal Plate

Lispi's accident reconstruction and biomechanics expert, Kenneth Solomon, Ph.D., testified that the Honda's rear seat was manufactured with a bend in the metal plate that runs behind the rear seat. The trial court granted Vollaro's motion to strike this testimony because it was not disclosed prior to trial. (See Code Civ. Proc., § 2034.260, subd. (c)(2) [an expert designation must include a brief narrative statement of the general substance of the expert's testimony].) On appeal, Lispi argues that Solomon's testimony was admissible because it "would have directly contradicted" the testimony of Vollaro's expert witness that the bend in the metal plate was caused by the force of the collision.[10]

There are a few circumstances in which a "party may call as a witness at trial an expert not previously designated by that party." (Code Civ. Proc., § 2034.310.) The circumstance that most closely fits this case is where the "expert is called as a witness to impeach the testimony of an expert witness offered by any other party at the trial. This impeachment may include testimony to the falsity or nonexistence of any fact used as the foundation for any opinion by any other party's expert witness, but may not include testimony that contradicts the opinion." (Code Civ. Proc., § 2034.310, subd. (b).)

Vollaro argues that Solomon's testimony was properly excluded because it did not qualify as impeachment under the statute. We agree. By statute, impeachment "may not include testimony that contradicts the opinion." (Code Civ. Proc., § 2034.310, subd. (b).) And in this case, Lispi concedes that the excluded testimony "would have directly

---

**10** Hinger, Vollaro's accident reconstruction expert, testified that while inspecting the Honda that was involved in this accident, he removed the rear seat and discovered a bend in the metal plate that runs "across the back of the seat." Hinger testified that the force of the collision had caused the metal to come forward and strike Vollaro on the back, which caused the metal plate to bend.

18

contradicted" the testimony of Vollaro's expert that the bend in the metal plate was caused by the force of the collision.

"Trial courts strictly construe the foundational fact requirement in Code of Civil Procedure section 2034.310 'so as to "prevent a party from offering a contrary opinion of his expert under the guise of impeachment." [Citation.]' (*Mizel v. City of Santa Monica* (2001) 93 Cal.App.4th 1059, 1068.)" (*Tesoro del Valle Master Homeowners Assn. v. Griffin* (2011) 200 Cal.App.4th 619, 641.) "'The trial court is vested with a sound discretion as to the permissible scope of evidence offered in rebuttal. [Citation.]' (*Johnston v. Brewer* (1940) 40 Cal.App.2d 583, 588.)" (*Ibid.*) Because Solomon's testimony failed to satisfy the foundational fact requirement of Code of Civil Procedure section 2034.310, the trial court properly exercised its discretion in striking it.

### D.     *Evidence Concerning the Rib Injury*

Lispi contends that the trial court erroneously admitted Vollaro's evidence and erroneously excluded Lispi's rebuttal evidence concerning the rib injury. We conclude, for the reasons discussed below, that the contention lacks merit.

### 1.     The Admission of Vollaro's "Man-Versus-Machine" Video and Accompanying Testimony

Lispi contends that her objection under Evidence Code section 352 to exclude Vollaro's "man-versus-machine" video and the accompanying testimony of Vollaro's biomechanics expert, Peter Francis, Ph.D., was erroneously overruled.[11] We are not persuaded.

---

[11]     Francis testified that "[b]iomechanics is the study of the human body . . . from an engineering perspective." The "human body functions like a machine system [and] obeys the laws of mechanics. As a result of that, we're able to examine how forces and movements affect the human body."

In addition to his testimony concerning the video, Francis testified that in his role as Vollaro's biomechanics expert, he applied Hinger's calculations of the Honda's change in velocity to determine that the impact caused the Honda to accelerate at a rate of

### a)      Evidence Code Section 352

The trial court's authority over the admission and exclusion of evidence "is particularly broad 'with respect to rulings that turn on the relevance of the proffered evidence.' (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.) Furthermore, '[i]t is for the trial court, in its discretion, to determine whether the probative value of relevant evidence is outweighed by a substantial danger of undue prejudice. The appellate court may not interfere with the trial court's determination . . . unless the trial court's determination was beyond the bounds of reason and resulted in a manifest miscarriage of justice.' (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 596.)" (*McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 296.)

### b)      Additional Relevant Facts

In support of the video's admission, Vollaro's attorney made the following arguments below: The video depicted several rear-end collisions in order to show the movements of the bodies inside the vehicles. The video was necessary to help Francis explain his biomechanical analysis of the movements of the persons inside the Honda. The video, which would take only "a couple minutes" to show, was not offered "for the truth," but as "demonstrative" evidence of the forces and body movements involved in a rear-end collision.

In support of her motion to exclude the video under Evidence Code section 352, Lispi argued that the video was irrelevant, prejudicial, and based on "an incomplete hypothetical." Lispi argued that the video was not relevant to this case because it depicted a male driver (as opposed to a female passenger) in a different car, with different

---

eight to 10 miles per hour, which caused the rear seat, which was "unusually hard because of a metal plate," to strike Vollaro's upper back at a rate of eight to 10 miles an hour. In Francis's opinion, the impact to Vollaro's upper body caused her "thorax to compress from front to back." The resulting increase in pressure caused a hernia at the site of Vollaro's recent gall bladder surgery. The injury to the rib was caused when Vollaro's body was suddenly restrained by the shoulder harness of the seatbelt.

seats, different headrests, and different injuries. This objection, which was overruled, was restated in the presence of the jury before the video was played at trial.

After the video was played for the jury, Francis testified that the video depicted the phases of a rear-end accident but was not intended to show "what happened in the subject accident." Francis explained that the video was intended to show "the general behavior of people in a rear end collision. Head and shoulders [go] flying backwards, impact with seat back, recoil, head and shoulders come back again."

c)      Analysis

Lispi contends that the trial court erred in determining that the video and Francis's accompanying testimony were relevant to this case. We disagree.

"'Only relevant evidence is admissible (Evid. Code, § 350; *People v. Crittenden* (1994) 9 Cal.4th 83, 132; [citations]), and all relevant evidence is admissible, unless excluded under the federal or California Constitution or by statute. (Evid. Code, § 351 . . . .) Relevant evidence is defined in Evidence Code section 210 as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." The test of relevance is whether the evidence tends "'logically, naturally, and by reasonable inference' to establish material facts . . . . [Citations.]" (*People v. Garceau* [(1993)] 6 Cal.4th [140,] 177 [disapproved on another ground in *People v. Yeoman* (2003) 31 Cal.4th 93, 117].) The trial court has broad discretion in determining the relevance of evidence (*ibid*.; *People v. Crittenden*, *supra*, 9 Cal.4th at p. 132; [citations]), but lacks discretion to admit irrelevant evidence. [Citations.]' (*People v. Scheid* (1997) 16 Cal.4th 1, 13-14.)" (*Donlen v. Ford Motor Co.* (2013) 217 Cal.App.4th 138, 148.)

We conclude that the video and Francis's accompanying testimony had a tendency to prove that when the Honda was rear-ended, the occupants recoiled back into the seat, rebounded forward into the shoulder and lap restraints, and recoiled back into the seat. The evidence was relevant to help Francis explain the biomechanics of Vollaro's

21

movements in relation to her injuries.  Accordingly, the trial court did not abuse its discretion in finding the video and Francis's testimony to be relevant.

Lispi also contends that the video and Francis's accompanying testimony was more prejudicial than probative.  We are not persuaded.

"'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.  "[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case.  The stronger the evidence, the more it is 'prejudicial.'  The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues*."'  [Citations.]"  (*People v. Escudero* (2010) 183 Cal.App.4th 302, 312, italics added; see also *Donlen v. Ford Motor Co.*, *supra*, 217 Cal.App.4th at p. 150.)

The trial court's admission of the video and Francis's accompanying testimony was not so arbitrary or patently absurd that it resulted in a manifest miscarriage of justice.  The court acted within its broad discretion when it determined the probative value of the video and Francis's testimony was not substantially outweighed by the probability of causing undue prejudice or confusion.

Finally, we disagree with Vollaro's contention that the video constituted an incomplete hypothetical.  Although the accidents depicted in the video were not identical to the accident in this case, Vollaro minimized the risk of confusion or undue prejudice by explaining to the jury that the video was not a reenactment of the collision in this case, but a demonstration of what generally happens to the occupants of a vehicle that is rear-ended.  We conclude that the trial court properly exercised its discretion in determining that the probative value of the evidence was not substantially outweighed by the probability of causing undue prejudice or confusion.

## 2. The Exclusion of Lispi's Evidence

According to Vollaro, she was unaware of her rib injury until after Lispi's expert witnesses were deposed. Due to this timing, Lispi's experts did not offer any opinions on Vollaro's rib injury during their depositions.

When Vollaro subsequently discovered her rib injury in March 2010, she augmented and reissued her list of experts and made them available for initial or supplemental depositions. When Lispi's experts received the newly discovered information concerning the rib injury, they developed their own opinions on that subject. However, Lispi did not notify Vollaro that Lispi's experts had formed opinions concerning the rib injury and would be testifying on that subject at trial.

Vollaro contends she was not aware until shortly before trial that Lispi's experts would be testifying about the rib injury. Vollaro moved to exclude such testimony on the ground that Lispi had failed to disclose that her experts would be testifying on that subject and it was too late to take their supplemental depositions. In opposition to the motion, Lispi argued that her experts had not changed their opinions since the date of their depositions. Given that trial was scheduled to begin and Lispi had not notified Vollaro that her experts would be testifying about the rib injury in time for their supplemental depositions to be taken, the trial court limited their trial testimony to the subjects that were covered in their depositions.

On appeal, Lispi argues that the trial court erred in precluding her experts from testifying about the rib injury and in excluding a video of an obstacle-course mud race that Vollaro had competed in during the interval between the accident and the diagnosis of her rib injury. Lispi contends that because Vollaro raised a new injury after Lispi's experts were deposed, Lispi had no obligation to inform Vollaro that her experts had reviewed the new information and formed opinions on that subject. In addition, Lispi argues that "her experts did not form new opinions; rather, they reviewed the depositions of Vollaro's experts and were prepared to provide proper rebuttal evidence."

In response to this argument, Vollaro argues that Lispi should have disclosed that her experts would be testifying about the rib injury and made them available in a timely

23

manner for their supplemental depositions to be taken.  Vollaro argues that because the expert witness depositions preceded the discovery of the rib injury, their opinions on that subject were never disclosed and were properly excluded at trial.

We conclude that because Lispi did not notify Vollaro in a timely manner that her experts would be testifying about a rib injury that was not discovered until after their depositions were taken, the trial court acted within its discretion in limiting their testimony to the matters that were covered in their depositions.  We distinguish this case from *Easterby v. Clark* (2009) 171 Cal.App.4th 772, 780-781, where the defense expert's new opinion was deemed admissible at trial because reasonable notice of the new opinion had been given and plaintiff had a fair opportunity to take a supplemental deposition.

We disagree with Lispi's contention that her experts' undisclosed opinions concerning the rib injury constituted "proper rebuttal evidence."  Lispi has failed to identify the foundational facts that qualified the excluded testimony as impeachment under Code of Civil Procedure section 2034.310.  As we previously discussed, impeachment "may not include testimony that contradicts the opinion." (Code Civ. Proc., § 2034.310, subd. (b).) This foundational requirement is strictly construed to "'"prevent a party from offering a contrary opinion of his expert under the guise of impeachment." [Citation.]' [Citation.]" (*Tesoro del Valle Master Homeowners Assn. v. Griffin*, *supra*, 200 Cal.App.4th at p. 641.)  Because Lispi has failed to explain how the excluded testimony satisfied the foundational requirement of Code of Civil Procedure section 2034.310, the evidence was properly excluded.

24

## DISPOSITION

The jury's special verdict findings are affirmed, but the judgment is reversed and the matter is remanded for a new trial on the following issues only: (1) whether Meredith was negligent and, if so, (2) whether his negligence was a cause of injury to Vollaro and, if so, (3) the percentage of fault attributable to Lispi and Meredith. Lispi is entitled to her costs on appeal.

**CERTIFIED FOR PARTIAL PUBLICATION**

EDMON, J.[**]

We concur:

EPSTEIN, P. J.

WILLHITE, J.

---

[**]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.