Filed 7/18/16  Trapper v. Associated Students, Inc. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JOHN TRAPPER, | B255176 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC491839) |
| v. | |
| ASSOCIATED STUDENTS, INC., etc., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Reversed.

John Trapper, in pro. per., for Plaintiff and Appellant.

Doumanian & Associates and Nancy P. Doumanian for Defendant and Respondent.

_____

Appellant John Trapper sued his former employer, respondent Associated Students, Inc., California State University, Long Beach (ASI), for retaliation in violation of the Fair Employment and Housing Act (Gov. Code, § 12940 et seq.). The trial court entered judgment for ASI based on the jury's special verdict findings. In this appeal from the judgment, Trapper argues that because the jury's special verdict findings are legally erroneous, they did not absolve ASI of liability, and thus the judgment must be reversed. We conclude he is correct, and we reverse and remand for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

ASI is an independent non-profit entity. It provides various services—a child development center, student union, recreational wellness center, yearbook, newspaper, and radio shows—to 35,000 students at California State University, Long Beach.

ASI hired Trapper as a media adviser in 2000. Trapper had no disciplinary issues through 2005. But he was the subject of three complaints in 2006 and 2007 for (1) rudeness to a student alum who wanted to purchase a yearbook; (2) mishandling a sexual harassment incident between two students; and (3) referring to a faculty member as a "bull dyke" and making sexually inappropriate remarks about a student's breasts ASI addressed these complaints under its system of progressive discipline. It provided Trapper with counseling, training, and written reports, and placed him, respectively, on 30-day, 60-day, and 90-day performance improvement plans. Following each disciplinary action, Trapper informally complained to his supervisor, Sylvana Cicero, of anti-gay discrimination by Dave Edwards, ASI's associate executive director.

In 2010, Trapper complained to the human resources committee of ASI that the employees who were being selected to assume additional responsibilities with a five percent pay increase were younger and less experienced. Trapper was disciplined in spring 2011 for encouraging a student, Julie Potter, to lie about her prior arrest on her employment application. Cicero suspended him for one week without pay, but the suspension was reversed by ASI's executive director, Richard Haller. Finding Trapper was too difficult to supervise, Cicero had him reassigned to a new supervisor.

That same year, Trapper sought a five percent pay increase based on his 2008 reclassification from student media adviser to general manager of the radio station. Haller granted Trapper a pay increase, retroactive from October or November 2008. When Cicero came under consideration for a five percent pay increase the following month, Trapper objected that Edwards was displaying favoritism toward Cicero, who did not deserve a raise because she had mishandled the Julie Potter incident. Cicero was offended by Trapper's opposition. At the August 2011 meeting of the human resources committee, Trapper also made disparaging remarks about the manner in which ASI's management treated students. Haller was offended by Trapper's remarks.

After the August 2011 meeting, Edwards formally complained to Haller that Trapper was engaging in "workplace aggression" by gossiping about Edwards' sexual orientation. Haller assigned the complaint to an independent investigator, Christine Farrell. Upon concluding her investigation, Farrell reported in December 2011 that Trapper had engaged in inappropriate behavior. Trapper was placed on paid administrative leave in March 2012, and his office was cleaned out.

Shortly before he was placed on administrative leave, Trapper formally complained to Haller that Edwards was engaging in discriminatory harassment based on Trapper's sexual orientation. Haller assigned his complaint to Mary Jo McGrath, a private investigator, who completed her investigation in August 2012. She did not find any of Trapper's allegations against Edwards to be true.

Haller sent Trapper a termination letter in July 2012. Haller testified that Trapper was terminated under ASI's progressive discipline policy because "the findings of workplace aggression against Mr. Edwards constituted his fourth employment . . . counseling action."

Because Trapper would become eligible to retire in November 2012, he was allowed to remain on unpaid leave from August 2012 to November 2012 to preserve his retirement benefits. He then retired at age 50 with a pension and medical and dental benefits.

3

In September 2012, Trapper initiated the present lawsuit against ASI. His complaint alleged six causes of action: sexual orientation discrimination, harassment based on sexual orientation, retaliation for complaints of sexual orientation discrimination, retaliation for complaints of age discrimination, failure to prevent discrimination, and wrongful termination in violation of public policy. After ASI's motion for summary judgment was denied, the case proceeded to jury trial.

Various trial witnesses provided testimony of the facts described above. Before the case was submitted to the jury, Trapper dismissed all causes of action except the two retaliation claims, and ASI dismissed its motion for nonsuit. The jury was instructed that to prove the retaliation claims, Trapper must show: (1) he made complaints to ASI regarding discrimination on the basis of his sexual orientation and age discrimination; (2) he was "disciplined, placed on administrative leave and/or discharged" by ASI; (3) his complaints regarding discrimination on the basis of his sexual orientation and age discrimination were a substantial motivating reason for ASI's decision to discipline, place on administrative leave and/or discharge him; (4) he was harmed; and (5) ASI's conduct was a substantial factor in causing him harm.

The parties jointly prepared a special verdict form. As to each cause of action, the form asked the same four questions. In response to the first question, the jury found that Trapper had complained to ASI about sexual orientation discrimination (Question 1) and age discrimination (Question 5). It answered "No" as to whether ASI had engaged in adverse employment actions towards Trapper when it placed him on an administrative leave and/or discharged him (Questions 2 and 6). After answering "No" to Questions 2 and 6, the jury followed the instructions on the form and answered no further questions. The special verdict form and the jury's responses, marked by an "X," are reproduced below:

"1.    Did John Trapper complain to [ASI] about discrimination on the basis of his sexual orientation?

    ___X___ Yes        _____ No

4

If your answer to Question 1 is yes, then answer Question 2. If your answer to Question 2 is no, then please go to Question 5.

2.	Did [ASI] engage in adverse employment actions towards John Trapper when it placed him on an administrative leave and/or discharged him?

_____ Yes		\_X\_No

If your answer to Question 2 is yes, then answer Question 3. If your answer to Question 2 is no, then answer Question 5.

3.	Was John Trapper's complaint about discrimination on the basis of his sexual orientation a substantial motivating reason for [ASI's] decision to place him on an administrative leave and/or discharge him?

_____ Yes		_____ No

If your answer to Question 3 is yes, then answer Question 4. If your answer to Question 3 is no, then go to Question 5.

4.	Was [ASI's] conduct a substantial factor in causing harm to John Trapper?

_____ Yes		_____ No

Regardless of your answer to this question, please answer Question 5.

5.	Did John Trapper complain to [ASI] about age discrimination?

\_\_\_X\_\_\_ Yes		_____ No

If your answer to Question 5 is yes, then answer Question 6. If your answer to Question 6 is no, then go to instructions before Question 9.

5

6. Did [ASI] engage in adverse employment actions towards John Trapper when it placed him on an administrative leave and/or discharged him?

_____ Yes          \_\_\_X\_\_\_ No

If your answer to Question 6 is yes, then answer Question 7. If your answer to Question 6 is no, then go to the instructions before Question 9.

7. Was John Trapper's complaint about age discrimination a substantial motivating reason for [ASI's] decision to place him on an administrative leave and/or discharge him?

_____ Yes          _____ No

If your answer to Question 7 is yes, then answer Question 8. If your answer to Question 7 is no, then go to the instructions before Question 9.

8. Was [ASI's] conduct a substantial factor in causing harm to John Trapper?

_____ Yes          _____ No

If you answered 'yes' to Questions 4 OR 8, then please answer Question 9. If you answered 'no' to Questions 1 AND 5, stop here, answer no further questions and have the presiding juror sign and date this form.

9. What are John Trapper's damages?

(a) Past economic loss          $_____
    [lost earnings]

(b) Future economic loss        $_____
    [lost earnings]

(c) Past noneconomic loss       $_____

TOTAL DAMAGES:                  $_____

If you answered 'yes' to questions 4 OR 8, and you answered question 9 with a dollar amount, please answer question 10. If you answered questions 1 AND 5 'no', then stop here answer no further questions, and have the presiding juror sign and date this form.

10. Did John Trapper prove by clear and convincing evidence that conduct constituting malice or oppression was committed by one or more officers, directors, or managing agents of [ASI], who acted on behalf of [ASI]?

_____ Yes          _____ No

Please have the presiding juror sign and date this form."

During deliberations, the jury foreperson sent the trial court a note requesting clarification: "The information before Question 9 does not clearly state whether we need to proceed with determining answers on damages. Please provide an answer on proceeding with Question 9 for every scenario."

The trial court discussed the note with the parties. ASI's counsel correctly grasped the problem and stated: "If they answered 'No,' for example, to Question[s] 2 and 6, it doesn't get them to damages . . . ." But Trapper's counsel disagreed, stating "the instruction on the form is accurate the way it is, and perhaps we need to clarify what they are asking for." The point raised by ASI's counsel—the jury would not reach the damages questions if it answered "No" to Questions 2 and 6—was lost in the discussion.

The trial court provided the jury with a modified instruction that was approved by both parties: "The second sentence to the instructions immediately before Question 9 are modified to read: If you answered 'no' to either Question 3 or 4 and your answers to Questions 7 or 8 is 'no,' stop here and answer no further questions and have the presiding juror sign and date . . . this form."

7

After answering Questions 1, 2, 5, and 6, the jury returned the special verdict form. Neither party objected to the jury's special verdict responses. After reviewing the responses, the trial court entered judgment for ASI. There were no post-judgment motions. Trapper timely appealed from the judgment.[1]

## DISCUSSION

"[A] special verdict is that by which the jury find the facts only, leaving the judgment to the Court. The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law." (Code Civ. Proc., § 624.)

In an appeal from a judgment based on a general verdict, all findings are implied in favor of the judgment. But the rule of implied findings does not apply to special verdicts. "The requirement that the jury must resolve every controverted issue is one of the recognized pitfalls of special verdicts. '[T]he possibility of a defective or incomplete special verdict, or possibly no verdict at all, is much greater than with a general verdict that is tested by special findings . . . .' [Citation.]" (*Falls v. Superior Court* (1987) 194 Cal.App.3d 851, 855.)

As a result of a flaw in the instructions, the jury did not go beyond Questions 2 and 6 of the special verdict form. ASI acknowledges the instructions were deficient in that they did not "take into account a scenario where the jury finds that: (1) [Trapper] complained about discrimination on the basis of sexual orientation and age, but that (2) ASI did not engage in any adverse employment actions," and that the modified

---

[1] At oral argument, the parties were advised that submission would be deferred in order to obtain additional briefing. Later, the parties submitted letter briefs in response to the following question: "If the court concludes that appellant did suffer an adverse employment action, notwithstanding the jury's negative answer to questions 2 and 6 on the verdict form (asking whether he suffered such action), and assuming that, as a matter of law, he did suffer such action, must the judgment be reversed since the jury did not respond at all to questions 3, 4, 7, 8, 9 and 10?"

instruction for Question 9 (given in response to the jury's request for clarification) "did nothing to dissuade the jury from finding that [Trapper] was not subjected to any adverse employment actions."

Trapper argues the jury's findings on Questions 2 and 6—that ASI did not engage in adverse employment actions by placing him on administrative leave and/or terminating him—are legally incorrect and indefensible. [2] We agree. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1004 [adverse employment action includes termination, demotion, or denial of available job].) Because it was undisputed at trial that Trapper was placed on administrative leave and terminated, whether these constituted adverse employment actions presented a question of law for the court to decide. (See 59 Cal. Jur. 3d Trial § 130 [if evidence is undisputed, issue becomes one of law for trial court, and trial court may disregard special verdict that is contrary to undisputed evidence].) Simply stated, Questions 2 and 6 should not have gone to the jury, and the special verdict findings—that ASI did not subject Trapper to an adverse employment action by placing him on administrative leave and terminating him—are erroneous as a matter of law.

ASI argues that Trapper is impermissibly challenging special verdict findings on a ground not raised in the trial court. (*Jones v. Wagner* (2001) 90 Cal.App.4th 466, 481 [issues not raised below may not be raised for first time on appeal]; *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 277 [same].) ASI relies on cases

---

[2] There was no dispute at trial that Trapper was terminated. Evidence of termination was presented through Trapper's testimony and Haller's testimony that he had sent Trapper a termination letter. The termination letter itself was admitted only in part; the portion of the termination letter that explained the reasons for his termination was excluded, apparently on the trial court's own motion. The trial court stated that it was troubled by the letter's reference to the McGrath investigation, which "might be prejudicial to plaintiff. We'll keep this out." ASI's attorney objected: "Just for the record, your Honor, the jury may speculate that there's a question or a problem with the reasons that we cited in that letter of his termination, which we do in that letter. That is his notice of termination." "The finding of workplace aggression was among the reasons for his termination." The trial court overruled ASI's objection, stating there was "[p]lenty of testimony for plaintiff and defendant on" the termination decision.

such as *Keener v. Jeld–Wen, Inc*. (2009) 46 Cal.4th 247, 263–268, which applied the forfeiture doctrine to a jury polling issue raised for the first time on appeal, and *Mardirossian*, *supra*, 153 Cal.App.4th at page 277, which precluded a challenge to a special verdict form on a ground not raised below. These cases are distinguishable. They did not consider whether forfeiture applies to an appeal based on insufficiency of the evidence or legal error appearing on the face of the judgment. (See *Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1067 [insufficiency of evidence may be raised for first time on appeal]); *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59 [legal errors appearing on face of order may be raised for first time on appeal].)

When the special verdict procedure is used, it is the trial court's responsibility to draw the correct conclusions of law. (Code Civ. Proc., § 624 ["conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law"].) Where, as here, the jury's findings are legally erroneous, the trial court may disregard them. (See *Kullmann v. Greenebaum* (1890) 84 Cal.98, 98–99 [affirming judgment entered for defendant after trial court properly disregarded erroneous jury findings in favor of plaintiff].) Because the evidence fails to support a theory of nonliability based on lack of adverse employment action, the judgment is not supported by substantial evidence. And because the jury's special verdict findings did not resolve every controverted issue, Trapper is entitled to a new trial on liability and damages. (Cf. *Vollaro v. Lispi* (2014) 224 Cal.App.4th 93, 103–104; *Fuller-Austin Insulation Co. v. Highlands Ins. Co*. (2006) 135 Cal.App.4th 958, 1005–1007.)

10

**DISPOSITION**

The judgment is reversed, and the matter is remanded for a new trial on liability and damages.  Appellant is entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.

11